———————————o———————————

## MARTIN v. THE STATE.

SUPREME COURT.—REVERSAL OF JUDGMENT.—EVIDENCE.—It is for the jury to judge of the facts and of the credibility of witnesses, and where there is evidence which, if uncontradicted, would sustain the verdict, the Supreme Court will only interfere in extreme cases.

SAME.—But where the evidence in support of the finding is clearly and conclusively contradicted, the court will order a new trial.

APPEAL from the Floyd Circuit Court.

ELLIOTT, J.—Martin was indicted in the Washington Circuit Court for an assault with intent to murder.

The case was transferred, on a change of venue, to the

*Floyd* Circuit Court, where it was tried. The jury, to which the case was submitted, found *Martin* guilty of an assault, and assessed his fine at five dollars, and not guilty of the intent to murder, as charged in the indictment. A motion for a new trial, which stated, among other causes, that the verdict of the jury was contrary to the evidence, was overruled, and judgment rendered on the verdict.

The evidence is before us, and we do not think it sustains the finding of the jury. True, *Heffren*, the prosecuting witness, testified that he was standing on the corner of a street in *Salem*, when the defendant came up to within six feet of him, and, without a word being said by either party, or an act being done by the witness to provoke an assault, drew a pistol and fired at him, when, in self defense, he advanced on the defendant, but without a weapon of any kind, and forced him back, and threw or knocked him, into a cellar, the door of which was open. But these statements were directly contradicted, in every essential particular, by two other witnesses who were immediately present. They both testified that the prosecuting witness was standing on the corner of the street, within a few feet of *Duckwall's* store, when *Martin* came up; and, when he was just about to pass between the prosecuting witness and the store, *Heffren*, without any provocation, or a word being said by either, suddenly drew and struck at him with, as one of them testified, "brass knucks"; that *Martin* threw up a cane and partially warded off the blow, which struck the cane, and, also, *Martin's* face; that *Martin* thereupon retreated, using the cane before his face to ward off the blows of *Heffren*, who was following him up, when *Martin* drew a pistol and fired at, but missed *Heffren; Martin* still continued to retreat in the same manner, being closely pursued by *Heffren*, until he fell backward into the cellar. One of these witnesses testified that he distinctly saw something in *Heffren's* hand, which he took to be "brass knucks"; that the blow so sounded on the cane, and he saw a mark on the cane, immediately afterwards,

made by the blow. The other witness did not see anything in *Heffren's* hand, but testified that the blow made a rattling noise on the cane, as if struck by a hammer. These witnesses were strongly corroborated by three others, who did not see the beginning of the difficulty, though near by at the time. Their attention was attracted by the noise, and when they first looked toward the parties, *Martin* was retreating, and *Heffren* pursuing him; *Martin* using his cane before his face to ward off the blows, finally drew a pistol and fired at *Heffren,* and then continued to give back until he fell into the cellar. Another witness also testified that he had a conversation with *Heffren* about the difficulty, about four weeks after it occurred, in which *Heffren* stated that he sought the difficulty with *Martin;* that he expected to have a difficulty with him, and thought he would take the start, and "went for him with brass knucks." All of these witnesses were disinterested. Two of them were introduced by the prosecution. They were unimpeached and uncontradicted, except by *Heffren.* Another fact admitted by *Heffren,* tending to corroborate and strengthen their evidence, is, that soon after the occurrence *Heffren* procured an affidavit to be filed against himself, and had a trial before a justice of the peace. His excuse is that he wanted the matter settled. But, if *Martin* was the offender, as he testified, and not himself; if, without any provocation on his part, *Martin* made upon him a murderous attack, as he insists, it is difficult to see how a prosecution against him would settle the matter. The evidence further shows that *Martin* was an old man, and subject to a disease of the heart, an attack of which followed the difficulty, and that *Heffren* was known as a violent and dangerous man, especially when under the influence of liquor. This was a criminal prosecution, in which, to justify a conviction, the evidence should be such as to exclude every reasonable doubt of the defendant's guilt.

The jury are the proper judges of the facts and of the credit that should be given to the witnesses, and where

Martin *v.* The State.

there is evidence which, if uncontradicted, would sustain the verdict, this court will only interfere with the finding in extreme cases. In *The Toledo and Wabash Railway Co. v. Goddard*, 25 Ind. 185, the rule is stated to be, "that if there is evidence from which the jury might reasonably find or infer a fact, and they find accordingly, this court will not disturb the verdict because there is other evidence in conflict with that on which the finding is based. But where the evidence in support of the finding is clearly and overwhelmingly or conclusively contradicted, it would be a reproach to the law and a flagrant outrage upon the rights of parties to refuse to disturb the verdict, simply because it had been found by a jury."

Such, we think, is the effect of the evidence in the case before us. Besides, it is evident that the jury did not credit *Heffren's* statements, for they acquitted *Martin* of the intent to murder, which was clearly made out by *Heffren's* testimony. How, then, they could have stopped short of an entire acquittal, without wholly and arbitrarily disregarding the testimony of all the other witnesses, it is impossible to conceive.

Judicial proceedings cannot be converted into a mockery. To say that, beyond a reasonable doubt, the defendant was guilty of an unlawful assault, in such a state of case, would be simply absurd, and to hesitate in ordering a new trial would be a plain disregard of the rights of the citizen.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*J. H. Butler* and *W. Q. Gresham*, for appellant.

*D. E. Williamson*, Attorney General, for the State.