Garfield *v.* The State.

No. 9172.

## GARFIELD *v.* THE STATE.

CRIMINAL LAW.—*Instruction.*—*Reasonable Doubt.*—An instruction, that the jury should be so convinced by the evidence, that, as prudent men, they would feel safe to act upon such conviction in matters of the highest concern to their own dearest and most important interests, under circumstances where there was no compulsion or coercion upon them to act at all, is not an essential departure from the doctrine of reasonable doubt as laid down in *Bradley* v. *The State,* 31 Ind. 492.

SAME.—*Teachings of Experience.* — An instruction, that "It is not uncommon for different witnesses of the same conversation to give pre-

Garfield v. The State.

cisely opposite accounts of it," etc., does not contain a proposition of law, but only declarations of supposed facts which must be left to the jury, in the light of their experience.

SAME.—*Harmless Error.*—It is no cause for complaint that such an instruction has been refused when the grounds for distrusting and doubting testimony have been fully and clearly stated in other instructions given at the defendant's request.

SAME.—*Doubts not Equivalent.*—It was not error to refuse to instruct the jury that they must acquit the defendant, if they had a reasonable doubt as to whether he left B. on the 1st of December, and was present at the house of S. B. on the morning of the 2d of December, 1879. The court could not say as matter of law, that a doubt whether the defendant left B. on December 1st was equivalent to a doubt whether he was present at the time and place of the offence.

LARCENY.—*Bank Bills and Money.*—*Personal Goods.*—Under section 24, 2 R. S. 1876, p. 435, the phrase "goods and chattels," in an indictment, means "personal goods, of which larceny may be committed," and includes "bank bills and money."

From the DeKalb Circuit Court.

*J. Morris* and *W. L. Penfield*, for appellant.

*D. P. Baldwin*, Attorney General, *G. B. Adams*, Prosecuting Attorney, and *W. W. Thornton*, for the State.

WOODS, J.—The appellant was arraigned upon the third, fourth and fifth counts of the indictment against him, and, on a trial by jury, was found guilty of burglary, as charged in the third count, and was sentenced, in accordance with the verdict, to imprisonment in the state-prison for the period of ten years.

Exception was saved to the overruling of the motion to quash, and error has been assigned on the ruling, but counsel have pointed out no objection to the count on which the conviction was had. It is needless to give a copy of it.

The questions discussed by counsel, and on which counsel for the appellant rely for a reversal of the judgment, arise out of the overruling of the motion for a new trial, and relate mainly to the giving and refusing of instructions.

The last instruction given was prepared by the court of its own motion, and was as follows:

"The rule of law touching reasonable doubts is a practical rule for the guidance of practical men when engaged in the solemn duty of assisting in the administration of justice. It is not therefore a rule about which there is anything whimsical or chimerical. It is not a mere possibility of error or mistake that constitutes such reasonable doubt. Despite every precaution that may be taken to prevent it, there may be, in all matters pertaining to human affairs, a mere possibility of error. If, then, you are so convinced by the evidence, of whatever class it may be, and considering all the facts and circumstances in evidence as a whole, of the guilt of the defendant, that as prudent men you would feel safe to act upon such conviction in matters of the highest concern and importance to your own dearest and most important interests, under circumstances where there was no compulsion or coercion upon you to act at all, then you will have attained such degree of certainty as excludes reasonable doubt and authorizes conviction."

"The appellant complains of this instruction, for the reason that it contains an inaccurate and incomplete statement of the law of reasonable doubt and conflicts with the statement of the law on the subject, in *Bradley* v. *The State*, 31. Ind. 492, which was copied *verbatim* into special instruction No. 15, given at the instance of the appellant. This general instruction lowered the criterion of reasonable doubt as set forth in special instruction No. 15. It emasculates the law of reasonable doubt as laid down in *Bradley* v. *The State*, and ever since approved." "In the general instruction the jury are charged that if they would feel safe to act upon the conviction, etc. But in *Bradley* v. *The State* this court went further, and held that it must induce such faith in the truth of the facts which the evidence tends to establish, that a prudent man might without distrust voluntarily act on their assumed existence;" and, extending their argument in this vein, counsel insist that the certainty which enables a pru-

dent man "to feel safe in acting" is greatly different from, and inferior to, the degree of certainty which would enable the prudent man "to act voluntarily and without distrust."

The case of *Bradley* v. *The State* recognizes both these expressions as proper statements of the law, and the difference between them is not such as to justify an interference with the verdict.   Since the promulgation of the opinion in *Bradley* v. *The State*, it has become a common practice in criminal cases for the defendants to ask, and the courts to give, instructions worded like those under consideration, but it may well be doubted whether they are entirely intelligible to the minds of average jurors, and whether other forms of expression could not be found, which would be equally accurate and much better understood by the untrained men of whom the juries are ordinarily composed; for instance, the expression quoted from Burrill, that moral certainty "is a state of impression produced by facts, in which a reasonable mind feels a sort of coercion or necessity to act in accordance with it; the conclusion presented being one which can not, morally speaking, be avoided, consistently with adherence to truth." *Bradley* v. *The State, supra;* Burrill Cir. Ev. 199.

The appellant asked the following instruction, which the court refused, namely:

"13. It is not uncommon for different witnesses of the same conversation to give precisely opposite accounts of it, and sometimes a witness may testify to statements as coming from one party when they actually came from another; and sometimes, too, a witness, with the best of intentions, may repeat the declarations of a party as having been made against himself when, in fact, the statement was actually made in his own favor."

In support of this instruction, reference is made to a note to sec. 200, vol. 1, of Greenleaf's Evidence.   It is not every statement of the law found in a text-book or opinion of a

judge, however well and accurately put, which can properly be embodied in an instruction. The processes of reasoning by which a conclusion is reached, if well made, are appropriate to be found either in text or opinion, but rarely, if ever, is it proper to deliver such reasoning to a jury in the form of instructions. The instruction under consideration does not contain a single proposition of law, but only declarations of supposed facts, which common experience has perhaps established as true. The teachings of experience on questions of fact are not, however, doctrines of law, which may be announced as such from the bench, nor yet are they matters of proof to be shown as other facts in the case. They may well enter into the arguments of attorneys, one side claiming that experience teaches one thing, and the other side asserting another conclusion, but the jury, not the judge, is the arbiter of such contentions, as of all questions of fact. The most that the judge may do, under our practice, which leaves questions of fact entirely to the jury, is to direct the attention of the jurors to such propositions and leave them, in the light of their experience, to say what credit should be given to any testimony on account of its alleged doubtful character. As to the instruction proposed, it may well be disputed whether it can be truly said to be "not uncommon for different witnesses of the same conversation to give *precisely opposite* accounts of it." Doubtless, it is not uncommon for them to give accounts differing more or less widely, amounting sometimes to direct opposition. But, as already said, these are subjects of discussion and argument before the jury, proper to be referred to in the instructions, but not to be controlled thereby.

But, aside from these considerations, the 12th and 14th instructions, given at the appellant's request, quite fully and clearly stated to the jury the grounds for distrusting and doubting the testimony in the case concerning the alleged declarations and admissions of the accused, and left no cause

for complaint on account of the exclusion of No. 13. even if it were, in all respects, proper to have been given.

The following instruction was asked and refused : * * * "You must acquit him if you have a reasonable doubt as to whether the defendant left Bryan on the 1st of December; if you have a reasonable doubt as to whether he was present at the house of Solomon Barney on the morning of 2d of December, 1879."

The court very clearly instructed the jury that they should acquit the defendant if there was any doubt of his presence at the scene of the crime, and properly explained what was meant by presence ; and, conceding for the argument, as counsel contend, that "the evidence on the part of the State shows, if it shows anything, that the appellant left Bryan (Ohio?) on December 1st, and that the burglary was committed on the evening of that day, or on the morning of December 2d, it does not follow that the instruction asked should have been given. The court could not say, as matter of law, that a doubt whether the defendant left Bryan on December 1st was equivalent to a doubt whether he was present at the time and place of the offence.

The only other consideration urged upon our attention is, that the verdict is not sustained by the evidence. The third count of the indictment, on which the conviction was had, charges the breaking "into the mansion house of Solomon Barney, then and there situate,with intent the goods and chattels of Solomon Barney" to steal, etc., and the claim is that the proof shows only an intent to steal *bank bills and money*, and that, in the law, these are not goods and chattels. We think the phrase "goods and chattels," as used, means the personal goods of said Solomon Barney. By section 24 of the act defining felonies, 2 R. S. 1876, p. 435, it is provided, "Bonds, promissory notes, bank notes, treasury notes issued by the authority of the State of Indiana, canal scrip, bills of

exchange, or other bills, orders, drafts, checks," etc., "shall be considered as personal goods, of which larceny may be committed."

We find no error in the record, and the judgment is affirmed, with costs.