MACDONALD *v.* STATE OF INDIANA

[No. 28,130.   Filed February 6, 1946.]

*Ray Lane,* of Chicago, Illinois, and *Harry Long,* of Gary, for appellant.

*James A. Emmert,* Attorney General, *Frank E. Coughlin,* First Assistant Attorney General, and *Thomas L. Webber,* Deputy Attorney General, for the State.

RICHMAN, J.—This appeal is from a judgment on a verdict convicting appellant of practicing medicine without a license.

In § 63-1301, Burns' 1943 Replacement, it is declared to

". . . be unlawful for any person to practice medicine, surgery or obstetrics in this state without first obtaining a license so to do. . . ."

In § 63-1311, it is provided that

"In charging any person . . . in an affidavit, information or indictment, with a violation of this law by practicing medicine . . . without a license, it shall be sufficient to charge that he did, upon a certain day and in a certain county, engage in the practice of medicine, he not having any license to so do, without averring any further or more particular facts concerning the same."

The affidavit herein was so worded. Appellant says that he was denied due process in having been compelled to go to trial thereon since it was insufficient to inform him of "the nature and cause of the accusation" in violation of § 13, Art. 1 of the Constitution of Indiana. Every argument made herein upon this proposition was also made in *State* v. *Williams* (1936), 211 Ind. 186, 5 N. E. (2d) 961, wherein the court held that a similar affidavit charging the unlawful practice of dentistry was not subject to a motion to quash. Cited

therein are numerous cases, including *Benham* v. *State* (1888), 116 Ind. 112, 18 N. E. 454; *Parks* v. *State* (1902), 159 Ind. 211, 64 N. E. 862; and *Melville* v. *State* (1909), 173 Ind. 352, 89 N. E. 490, 90 N. E. 467, all holding that an affidavit similar to that before us charging the unlawful practice of medicine was sufficient on motion to quash. We are asked to overrule these cases. The argument is that the affidavit should have contained in detail the specific acts done which constituted the alleged unlawful practice of medicine. The court in the Williams case said:

> "The substantive offense charged is the practicing of dentistry without a license. All, or any one, of the acts set forth in section 63-522, Burns' 1933 (§ 5607 Baldwin's 1934), *supra*, may enter into the substantive offense, but, whether one or all of them do so, there is but one substantive offense— that is, practicing dentistry without a license. The language of the charge in the affidavit sufficiently meets the requirements of section 13 of Article 1 of the Indiana State Constitution."

So here the substantive offense was practicing medicine without a license. The statute, § 63-1311, *supra*, defines in detail what acts shall be deemed to be the practice of medicine. It can hardly be denied that if this affidavit had stated that he did each of the acts so detailed in the statute the affidavit would have been sufficient. In the trial the prosecuting attorney might not have been able to prove all but proof of only one, coupled with the fact that he had no license, would have been sufficient to convict. Appellant was bound to take knowledge of the statutory definition of the practice of medicine. As the affidavit was framed he had knowledge that he might be called on to meet evidence as to any one of such acts and could not have been misled. The rule stated in the cases above cited has

been the law for many years and we are not disposed to change it. The motion to quash was properly overruled.

The only other questions briefed deal with the giving of certain instructions and the refusal to give others and several claims of error in rulings on admission of evidence.

As background for the consideration of those questions the evidence discloses that appellant had a sign on his door, reading:

"Dr. MacDonald. Eye-Ear-Nose-Throat." He also ■ issued receipts for service on stationery similar to the sign. Three witnesses each testified to being attracted by the sign and consulting the appellant for treatment, one for throat trouble, another for sinus trouble, and the third for removal of water in his ears. Another witness who testified as to being treated was apparently not attracted by appellant's sign. Appellant admitted that he had never been licensed to practice medicine or surgery in Lake County where his office was located. He did have a license to practice optometry. Two licenses had been issued to him as a drugless physician, each of which had been revoked after hearing before the State Examination and Registration Board in Indianapolis. He admitted that he had notice from the State Board of such revocation but said he had received no notice from the county. Appellant was permitted to introduce into evidence these two licenses. The records of the clerk of the Lake Circuit Court showed that the clerk did not comply strictly with § 63-1306, Burns' 1943 Replacement, requiring him to record the order of revocation "upon the margin of the record of such license," but that he did on such margin make a notation that each license had been revoked as of a certain date.

Apparently it was appellant's contention that the action of the State Board was incomplete without such record. That is not true nor was the clerk required to notify appellant of something which he already knew. This mistaken theory on the part of appellant entered largely into his defense, which was predicated upon the validity of the two licenses.

There was no error in the court's giving Instruction No. 3, defining the practice of medicine in the language of the statute. He says the court should have defined therein "what other licensed professions there are that are excepted from the provisions of said definition," referring to chiropractors, naturopaths, electro-therapists or physio-therapists. There was no question involved as to the rights of persons who might have been so licensed.

The court's Instruction No. 5 excluded from consideration of the jury as immaterial whether persons treated by appellant were benefited or cured. It correctly stated that the sole question was ". . . whether or not the defendant did any of the acts and things enumerated in the statute defining 'The Practice of Medicine.'" Appellant complains because the jury was not told in this instruction that it was also immaterial if any persons treated were not benefited or cured and says that the instruction permitted the jury to infer as evidence of guilt the failure of the defendant to benefit or cure any such patient. There is no merit in this contention.

The court's Instructions No. 6, 8 and 9 each singled out certain things which the statute defines as the practice of medicine and informed the jury that if they found that appellant was doing these things he was practicing medicine. He contended that an optometrist may do some of these things. There

could be no reasonable contention from the evidence that appellant was acting under his license to practice optometry. These instructions must be considered not only in connection with the evidence but also with the court's Instruction No. 14 that the practice of optometry ". . . does not include medical treatment or surgical work upon the eye." and that ". . . it permits such measures as the fitting of glasses, and the application of heat, but not of medicine, to the eye for the purpose of correcting vision." Appellant objected to this instruction on the ground that ". . . in order to correct vision, it may be necessary for the Optometrist to administer medicine to the eye in order to ascertain what the trouble or disease or defect is in the eye, and therefore, this instruction is misleading." From the evidence of the only persons who testified that they were treated by appellant, it is obvious that in no instance was he pretending to treat them as an optometrist. There was no contention that any of them sought his services in that capacity or that he administered medicine in the eyes of any of them in order to ascertain a trouble, disease or defect in the eye. If an optometrist may use medicine in the eye for the purpose of diagnosis and if it had been contended that such was all that appellant was doing, a different question would be presented. We do not believe that the jury could have been misled by this instruction as applied to the evidence.

The court's Instruction No. 21 was as follows:

"Under the constitution of Indiana you are given the right to determine both the law and the facts of the case, but it is your duty to administer the law in this case as you actually find it to be and you are not at liberty to set aside the law and disregard it for any reason. If you have no well defined opinion as to what the law is, then it is your duty to give the instruction of the

court your respectful consideration in determining what the law is."

The court refused to give Instruction No. 1 tendered by appellant, as follows:

"You are instructed that it is provided by the constitution of the State of Indiana that in all criminal cases whatever the Jury shall have the right to determine the law of the case. While it is the duty of the Court to instruct the Jury as to the law yet, I instruct you that the instructions of the Court are advisory only, and are not given to you for the purpose of binding your conscience and notwithstanding my instructions you have the constitutional right to determine what the law of this case is for yourselves."

Instructions embodying the language of these two instructions were considered in *Bird* v. *State* (1886), 107 Ind. 154, 8 N. E. 14, and *Cunacoff* v. *State* (1923), 193 Ind. 62, 138 N. E. 690. We think that the instruction given correctly informed the jury of its duty and that the failure to incorporate therein the statement that

". . . the instructions of the Court are advisory only, and are not given to you for the purpose of binding your conscience . . ."

did not make it defective. Nor was the court bound to discredit or disparage the court's statement of the law as given in all other instructions by giving the instruction tendered by appellant. *Eisenshank* v. *State* (1926), 197 Ind. 463, 150 N. E. 365.

Appellant's Instructions No. 2, 3 and 20 were based upon the erroneous theory that he held valid licenses to practice chiropractic or physio-therapy under a drugless physician's license and were therefore properly refused.

As a witness in his own behalf appellant was asked concerning his studies at certain schools and the educational requirements of those schools. The court properly sustained objections to these questions as having no bearing on the issue. Similar questions were asked so-called experts, testifying in appellant's behalf, and for the same reason the court properly sustained the objections thereto.

From the testimony of witnesses who were treated by appellant he isolated certain acts done by him and asked a medical doctor whether such acts, separately, in his opinion constituted the practice of medicine. Using a syringe to wash wax out of ears or swabbing a throat with cotton on a stick or using a light to locate foreign substances in the eye or putting an infra-red ray lamp in proximity to an ear each might under some circumstances be deemed not to be the practice of medicine. Singling out these separate acts and asking a witness the abstract question as to whether such an act, wholly unrelated to the circumstances under which it was performed, would constitute the practice of medicine would in each instance open a collateral inquiry tending to confuse and mislead the jury. The issue was not whether under any conceivable set of circumstances a particular act constituted the practice of medicine, but, on the contrary, whether these and other acts done by appellant under the circumstances in evidence constituted such practice. Had the hypothetical question detailed all the circumstances under which each act was performed, ending with an inquiry as to whether such conduct constituted the practice of medicine, the question would have invaded the province of the jury which was to decide exactly that question. It seems to us that this piece-meal inquiry, designed to get the same result, was subject to

the same infirmity. And besides all this, a medical doctor by training and experience gains no peculiar ability enabling him better than a jury to determine whether conduct of another person is within the statutory definition of the practice of medicine.

Finding no error the judgment is affirmed.

Note.—Reported in 64 N. E. (2d) 794.