CHAMBERS *v.* STATE OF INDIANA.

[No. 28,951. Filed May 1, 1953. Rehearing denied June 9, 1953.]

*Jess B. Fields,* of Bloomington, for appellant.

*J. Emmett McManamon,* former Attorney General, *Edwin K. Steers,* Attorney General, and *William T. McClain,* former Deputy Attorney General, for appellee.

BOBBITT, J.—Appellant was charged by affidavit under Acts 1927, ch. 203, §2, p. 580, being §10-401, Burns' 1942 Replacement, with assault and battery with intent to commit a felony, was tried by jury, found guilty as charged, and sentenced to the Indiana State Prison for a period of one (1) to ten (10) years.

The sole error here assigned is the overruling of appellant's motion for a new trial.

Fourteen specifications or grounds therefor are assigned.

Appellant has voluntarily waived specifications 2, 9, 10 and 11, and we shall consider the others in their regular order.

*First:* Appellant asserts, by specifications 1 and 3, that the verdict of the jury is not supported by sufficient evidence, and that it is contrary to law because a reasonable doubt exists as to his guilt, and urges us to review the evidence "to determine this fact."

We are asked by appellant to weigh the evidence which here is in conflict, to determine the question of "reasonable doubt."

Whether the testimony of appellant was sufficient to raise reasonable doubt in the minds of the jury was a question for their determination, and if there is evidence of probative value from which the jury could have found or from which it might have properly inferred, that appellant was guilty as charged, their verdict will not be disturbed on appeal.

Appellant relies upon *Batterson* v. *State* (1878), 63 Ind. 531, and *Martin* v. *State* (1867), 28 Ind. 310, which hold that where this court is satisfied from the evidence that a reasonable doubt of the guilt of the defendant exists a judgment of conviction will be reversed. The rule in these cases has not been followed in the later decisions of this court.

In *Deal* v. *State* (1895), 140 Ind. 354, 358, 39 N. E. 930, Judge McCabe, speaking for this court, ably stated the reasons for the settled rule that this court will not weigh evidence. We think it might be well, in view of the question here raised, to restate such reasons as they appear at p. 358 of 140 Ind., as follows:

"The reason most frequently given in the decisions of this court for the rule that this court can

not weigh the evidence, and therefore can not reverse for the reason that the preponderance of the evidence seems to be against the finding or verdict, is that the opportunities and means of the court and jury trying the cause are so vastly superior to those of this court, they being able to see the witnesses face to face, to observe their conduct, appearance and demeanor on the witness stand, and thus judging of their intelligence, fairness and candor and many other means of weighing evidence that this court can not have, that it is deemed safer to leave that duty to be performed exclusively by them. But the sounder and more substantial reason is that the Legislature has expressly limited the jurisdiction of this court on appeal to the correction of errors of law."[1]

If there is no evidence in the record here before us to support the verdict, or if there is no evidence from which proper inferences might have been drawn to support the verdict, then it is contrary to law. However, such is not the situation.

There is sufficient evidence in the record from which the jury might have found that Paul Mullis, the prosecuting witness, was visiting his half-brother in Bloomington, Indiana, on January 12, 1952; that his sister and her husband came to the house about 9:30 P. M.; that Mullis drank beer with his half-brother and the others present and watched television until twelve o'clock when he went outside the house to an outdoor toilet which was about forty feet from the entrance to the house.

That Mullis went out the front door and as he turned the corner of the house he saw a man standing about half-way between the house and the toilet. Mullis said: "Hello" and asked the man what he was doing, and he

---

1. See Acts 1881 (Spec. Sess.) ch. 38, §647, p. 240, §2-3225, Burns' 1946 Replacement.

answered that he was taking a walk. Mullis then said that it was a funny place to be taking a walk. When they were about six feet apart the man drew a knife from his pocket and stabbed Mullis in the stomach and knocked him over against the house. Mullis, knowing he had a knife, attempted to jump on his assailant when he grabbed Mullis' foot and cut the tendons in his leg; and the man then caught Mullis by his clothes and cut him across the front of his shirt. After this Mullis "beat off" his assailant and ran down the railroad tracks where he hailed an automobile which took him to the police station and then to the hospital. That while in the hospital Mullis observed his assailant making a telephone call from a telephone in the hall outside the operating room. A policeman, who had been called to the hospital to meet Mullis, saw appellant about the time or immediately after he made the telephone call and after Mullis had identified him as the man who attacked him, searched appellant and found a knife in his pocket.

Appellant testified in his own behalf, that he was driving his truck on 11th Street in Bloomington on the night of January 12, 1952, when Mrs. Juanita Mullis flagged him down and asked him if he would go to her house because she was having trouble with Paul Mullis; that some time after meeting Mrs. Mullis he parked his truck on Rogers Street and walked up the railroad tracks to Clarence and Juanita Mullis' house on Fairview Street and when he came to the house he saw Clarence Mullis asleep in the kitchen; that at the time someone slapped appellant on the shoulder and said, "You don't know me, do you?"; that this "someone" then turned appellant around and struck him across his (appellant's) left hand; that appellant left and when he was about one block from the Mullis house he dis-

covered that his hand was bleeding badly and stopped at a neighbor's house and this neighbor took him (appellant) to the same hospital where Paul Mullis, the prosecuting witness, had gone.

The clothes which Mullis wore on the night of January 12, 1952 were bloody and showed signs of having been slashed by a knife. He was in the hospital nine weeks and on crutches about four weeks thereafter.

We believe the evidence above recited is sufficient to sustain the verdict of the jury herein, and the verdict is not contrary to law.

*Second:* By specification 4 appellant asserts error in giving instruction No. 7-A, which is as follows:

"The Constitution of Indiana provides as follows: 'In all criminal cases whatever, the jury shall have the right to determine the law and the facts.' [Const. art. 1, §19.]

"Therefore, in this case, the jury are the exclusive judges of the facts, and have the right to determine the law. While the Constitution of the State of Indiana makes you jurors the judges of the law, as well as of the facts in this case, it is not meant by this that you may wilfully and arbitrarily disregard the law or the facts as shown by the testimony and the evidence; but, it means that you should honestly, justly and impartially determine the law as it exists, and as found in the statutes and the Constitution of the State of Indiana, and the facts should be judged and found by you from a careful consideration of the testimony and evidence submitted to you.",

because "it takes away from the Jury the absolute right under the Constitution to be the sole judges of the Law and the facts." It is difficult to understand appellant's contention when the instruction specifically says, ". . . in this case, the jury are the exclusive judges of the facts, and have the right to deter-

mine the law." This was a proper instruction and no error was committed in giving it. *MacDonald* v. *State* (1946), 224 Ind. 74, 81, 64 N. E. 2d 794; *Hoffa* v. *State* (1924),) 194 Ind. 300, 301, 142 N. E. 653.

*Third:* It is asserted in specification 5 that the court erred in admitting evidence as to other offenses committed by appellant. Appellant testified as a witness in his own behalf and, on cross-examination by the prosecuting attorney, was asked concerning other crimes which he had committed. This was proper cross-examination. In *Bolden* v. *State* (1927), 199 Ind. 160, 155 N. E. 824, at p. 163, this court said:

> "It is well settled in this jurisdiction that the law invests any person accused of crime with a presumption in favor of good character previous to the time of the commission of the alleged offense, and the state cannot offer evidence to impeach such character until the accused has put his character in issue by offering evidence in support of it, or until he has testified as a witness. And a defendant, when he becomes a witness in his own behalf, may be questioned on cross-examination as to specific criminal convictions to test his credibility and to discredit his testimony."

We reaffirm this rule.

*Fourth:* By specification 6 appellant asserts that the trial court erred in giving preliminary instruction No. 10 which is as follows:

> "It is proper for the court at this point to explain to you what is meant by 'reasonable doubt'.
>
> "The rule of law touching reasonable doubt is a practical rule for the guidance of practical men when engaged in the solemn duty of assisting in the administration of justice. It is not, therefore, a rule about which there is anything whimsical or

chimerical. It is not a mere possibility of error or mistake that constitutes reasonable doubt. Despite every precaution that may be taken to prevent it there may be, in all matters pertaining to human affairs, a mere possibility of error. If, then you, and each of you are so convinced by the evidence of whatever class it may be, and considering all the facts and circumstances in evidence as a whole, of the guilt of the defendant, that as prudent men and women you would feel safe to act upon such conviction in matters of the highest concern and importance to your own dearest and most important interests, under circumstances where there is no complusion or coercion upon you to act at all, then you will have attained such a degree of certainty as excludes reasonable doubt and authorized conviction."

This instruction, while probably containing harmless surplusage, does correctly state the rule of law pertaining to "reasonable doubt." Preliminary instruction No. 10 as here given was approved by this court in *Garfield* v. *State* (1881), 74 Ind. 60, 62.

*Fifth:* By specifications 7, 8, 12 and 13 appellant asserts that the court erred in refusing to give instructions 3, 7, 9 and 10 tendered by him. These instructions all pertain to "reasonable doubt."

The court, on its own motion, gave instructions 1-A and 6-A as follows:

### "INSTRUCTION NO. 1-A

"The defendant is presumed to be innocent of any offense, notwithstanding this charge against him; and this presumption of innocence remains with him throughout the trial. And in your deliberations you should weigh the evidence in the light of this presumption that the defendant is innocent, and unless from the evidence you are convinced of his guilt beyond a reasonable doubt, you should find the defendant not guilty.

## "INSTRUCTION No. 6-A

"Upon the issues thus joined the defendant has been put upon his trial. He is not called upon to establish his innocence, for notwithstanding the approved affidavit against him, for all purposes of this trial, the law presumes him innocent of the commission of any crime; this presumption stood in his favor, not only at the beginning of the trial of this cause, but continues throughout the entire trial, and there can be no confliction unless the evidence in it has wholly removed such presumption, and has satisfied you beyond a reasonable doubt of the guilt of the accused."

The foregoing instructions are in substance the same as instructions 3, 7, 9 and 10 tendered by appellant and refused, and they fully cover all the matters contained in those requested by appellant. Appellant's tendered instructions 3, 7, 9 and 10 were, under the circumstances, properly refused. *Faulkenberg* v. *State* (1926), 197 Ind. 491, 497, 151 N. E. 382; Ewbank's Criminal Law, 2d ed., §625, p. 439.

*Sixth:* By specification 14 appellant asserts that the the court erred in giving, on its own motion, instruction number 8-A. The record fails to disclose any objection or exception by appellant in the trial court to the giving of this instruction, hence no question is presented in this court.

Finding no reversible error, the judgment of the trial court is affirmed.

Judgment affirmed.

Note.—Reported in 111 N. E. 2d 816.