GREER *v.* STATE OF INDIANA.

[No. 16884. Filed March 11, 1969. Rehearing denied April 23, 1969.]

*Warren R. Everett,* of Terre Haute, for appellant.

*John J. Dillon,* Attorney General, *Rex P. Killian,* Deputy Attorney General, for appellee.

DeBruler, C. J.—The Appellant was charged by indictment with first degree murder. A motion to quash the indictment was filed and overruled. The Appellant pleaded not guilty, was tried by jury and found guilty of second degree murder. Following receipt of a pre-sentence investigation the trial court adjudged the Appellant guilty of second degree murder and sentenced her to life imprisonment. A motion for new trial was overruled.

Appellant assigns as error on appeal certain actions of the trial court in overruling the motion to quash, refusing to withdraw the submission of the case from the jury after alleged improper comments of the prosecutor in his opening statement, in overruling Appellant's objection to certain questions propounded to the witness Ford, and in admitting a written statement made by the Appellant in evidence over Appellant's objection.

The Appellant first contends that the court erred in overruling her motion to quash the indictment which indictment reads in pertinent part as follows:

"The Grand Jury of Vigo County, in the State of Indiana, good and lawful men, duly and legally impaneled, charged and sworn to inquire into felonies and certain misdemeanors in and for the body of said County of Vigo, in the name and by the authority of the State of Indiana, on their oath present that one Judy Greer, late of said County and State, on the 21st day of October, A.D., 1966, at said County and State aforesaid, did then and there unlawfully, feloniously, purposely and with premeditated malice, kill and murder one Edwin Greer, by then and there unlawfully, feloniously, purposely and with premeditated malice beating, striking, and holding said Edwin Greer in such a manner as to cause suffocation of which he, the said Edwin Greer, in the County of Vigo, State of Indiana, then and there died. And the Grand Jury aforesaid, on their oath aforesaid, do say and charge that Judy Greer did in the manner and form aforesaid, unlawfully, feloniously, purposely and with premeditated malice, kill and murder the said Edwin Greer, all being then and there contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Indiana."

In accordance with the case of *Hamilton v. State* (1957), 237 Ind. 298, 145 N. E. 2d 391 and *Martin v. State* (1963), 245 Ind. 224, 194 N. E. 2d 721, we now hold that with respect to the charge of first degree murder the ruling of the trial court on the motion to quash the indictment is both harmless and moot on appeal since the Appellant was convicted of the lesser and included offense of second degree murder; and we now consider whether or not second degree murder is properly charged in the indictment.

The Appellant argues that this indictment was void because it did not contain a sufficiently certain statement of the offense. Appellant first argues that the fatal uncertainty arises from the failure of the indictment to apprise her of whether the death of the alleged victim resulted from a "beat-

ing", a "striking", or a "holding in such a manner as to cause suffocation". Appellant also argues that in the event suffocation is to be considered as the sole cause of death, she is not apprised of how "beating" and "striking" caused suffocation. Appellant as her last argument attacking the sufficiency of the indictment argues that if the "striking" and "beating" alleged in the indictment did not cause the suffocation then their presence in the indictment is surplusage and makes it fatally uncertain.

Appellant's first contention is not well taken because it is not possible to read the indictment in such manner as to support this interpretation. The acts of "striking", "beating" and "holding said Edwin Greer in such a manner as to cause suffocation" cannot be parallel acts causing death since the indictment cannot be grammatically and logically read as follows: "... Judy Greer ... did ... kill and murder one Edwin Greer, by . . . beating, striking . . . of which . . he died." Such a construction is too strained as this does not conform to the rules of grammar. The indictment is not susceptible of being interpreted in this manner.

In addition, the record of the trial reveals that the court in overruling the motion to quash, limited the State to proof of the cause of death by suffocation, and, therefore, the Appellant knew that she need not defend against possible assertions by the State that the cause of death was "beating" or "striking".

The Appellant next contends that if suffocation is the only cause of death, then the indictment is invalid because it does not contain a certain statement of how "beating" or "striking" caused the death by suffocation. We hasten to point out that neither is it alleged how "holding" caused death by suffocation. In the case of *Littell v. State* (1892), 133 Ind. 577, 33 N. E. 417, it was held that the precise manner of applying force, or a precise medical description of the ceasing of each bodily function are matters properly

for evidence at the trial. The only facts necessary to the indictment are those required by Burns' Ind. Stat. Anno. § 9-1104 which reads in part as follows:

"Contents of indictment or affidavit.—The indictment or affidavit must contain:

\* \* \*

"Second. A statement of the facts constituting the offense in plain and concise language without unnecessary repetition."

It is clear from this indictment that the Appellant is charged with the first degree murder of Edwin Greer, and that the victim's death resulted from suffocation. The Appellant was notified by this indictment of the offense of which she was charged and that she must be prepared to defend against an allegation of death by suffocation which in turn resulted from an attack during which the victim was beat, struck and held. There is nothing uncertain or defective in the indictment when interpreted in this manner.

The Appellant finally contends that it is reasonable to interpret the "beating, striking" in the indictment as separate and distinct acts which did not result in death but that the act of "holding" is the act which resulted in suffocation and death; and that as a result "beating, striking" are surplusage and create fatal uncertainty and lack of notice of what had to be defended against.

Even if "beating" and "striking" are considered surplusage, the indictment will not be quashed unless, with the surplusage struck, the indictment does not contain sufficient matter "to indicate the crime and person charged." *Drake v. State* (1896), 145 Ind. 210, 41 N. E. 799, 44 N. E. 188; Burns' § 9-1127 (6). When so considering the indictment it still contains a statement that the Appellant committed first degree murder by causing death by suffocation by holding, and, therefore, when considered as surplusage

the words "beating, striking" being in the indictment would not result in a ruling quashing the indictment.

Even though this indictment is susceptible of two reasonable interpretations, namely, that "beating" and "striking" contributed to causing death by suffocation and that they were separate acts not causing death by suffocation, there is no prejudice to the substantial rights of the Appellant.

"Tenth. For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." Burns' § 9-1127 (10).

The trial revealed that the alleged victim Edwin Greer was the son of the Appellant and died when six months old after having been beaten. A physician testified on behalf of the State that the victim suffered a skull facture and broken left humerus; that the right side of the face had been pushed over and depressed and the head and face were no longer symmetrical. He further testified that the child died on his stomach, and that the injury to the child victim's head and arm occurred at the same time as the suffocation which resulted in death, and that the fractured skull and arm did not result in death. In this indictment the State chose to plead the further acts of "beating" and "striking" which were part of the attack which resulted in death. The Appellant was given more facts in this indictment than would have been sufficient to notify her of the offense of which she was charged and benefits from their presence in the indictment. The nature of the attack upon any alleged victim is clearly a relevant matter for the State to go into in proving that the victim died of unnatural causes.

Appellant's second argument involves the following facts: On May 20, 1966, Edwin Greer, 7 days old, was admitted to a Terre Haute hospital for treatment of head injuries. Having been notified of this, the police went to the home of Judy Greer, 19 year-old mother of Edwin, to investigate these

injuries. Mrs. Greer agreed to go down to police headquarters at 10:00 a.m., May 21, 1966, to talk to the police about her child's injuries. She arrived at police headquarters without having consulted an attorney. The police asked her about the injuries. to her child and she told them he had fallen off a sofa. When the police expressed disbelief at this Mrs. Greer said "Oh well, I'll tell you the truth." According to the police, at this point they gave her their standard advisement of constitutional rights, which consisted of the following:(1) She could have an attorney if she wanted one; (2) Anything she said could be used against her at a trial. She was asked if she wished to make a statement of her own free will, with no threats or promises, to which she answered yes. Mrs. Greer then stated to the police that she had slapped the child hard twice because it was crying and making her very nervous. This statement was reduced to writing and signed by Mrs. Greer. On June 26, 1966, the baby was returned to her. On October 21, 1966, Mrs. Greer killed Edwin Greer, which resulted in the first degree murder trial from which this appeal is taken. Testimony about Mrs. Greer's oral statements and the written statement (State's Exhibit "2") concerning the May 20, 1966, beating of Edwin Greer, were introduced in evidence at the murder trial. They were offered and admitted to prove intent and malice on the part of Judy Greer in the killing of Edwin Greer.

Appellant argues the statements were inadmissible because appellant had not been properly advised of her constitutional rights prior to being questioned by the police, as required by the United States Supreme Court in *Miranda v. Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 694.

First, we note that the incriminating statements in question were not statements about the crime for which the Appellant was being tried, but concerned the prior assault on Edwin Greer and were introduced to prove intent and malice in the killing of the child. The statements were used as *evidence tending* to prove one element of the

crime charged; they were not "confessions" of the crime charged or even of one element of it. They would normally be admissible for such a limited purpose. *Wahl v. State* (1951), 229 Ind. 521, 98 N. E. 2d 671; *Peats v. State* (1938), 213 Ind. 560, 12 N. E. 2d 270; but it is clear that the *Miranda* rules would apply to the taking of such statements which are used in this way. They are still incriminating statements of an accused introduced in evidence against him. There is no difference in principle between self-incriminating statements used as evidence of one element and as admissions of all the elements.

However, in the view we take of this case it is unnecessary to determine whether or not the advisement of rights by the police in this case meets the standard set out in the *Miranda* case. Even if the statements were inadmissible under the *Miranda* rule, it was harmless error because from the record it is apparent the Appellant repeated openly and fully on direct examination, the complete story concerning the prior assault and the statements made to the police.

There is authority in Indiana to the effect that error in the admission of statements of a defendant is waived when he testified to substantially the same facts as recited in the statements. *Beeman v. State* (1953), 232 Ind. 683, 115 N. E. 2d 919; *Turpin v. State* (1934), 206 Ind. 345, 189 N. E. 403. But in this case we are dealing with a federal constitutional error and we must apply federal standards to determine if the error was harmless. *Chapman v. California* (1967), 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705. In defining such a standard the court there said:

"We, therefore, do no more than adhere to the meaning of our Fahy case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of

applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard...." 386 U. S. at 24.

This Court has had occasion to define reasonable doubt for the use of the trier of fact in criminal cases. We have said:

> "The rule of law defining proof beyond a reasonable doubt is well settled. It requires the trier of the facts to be so convinced by the evidence that as a prudent man he would feel safe to act upon such conviction in matters of the highest concern and importance to his own nearest, dearest and most important interests in circumstances where there was no compulsion or coercion to act at all." *Easton v. State* (1967), 248 Ind. 338, 228 N. E. 2d 6; *Baker v. State* (1956), 236 Ind. 55, 138 N. E. 2d 641; *Chambers v. State* (1953), 232 Ind. 349, 111 N. E. 2d 816.

We are now to apply this test ourselves in determining whether a federal constitutional error was harmless.

We hold, then, that Appellant's testimony on direct examination concerning the prior assault on Edwin Greer rendered the erroneous (if it was such) admission into evidence of her incriminating statements concerning that assault, harmless beyond a reasonable doubt. A similar result was reached in *State v. McDaniel* (1868), 272 N. C. 556, 158 S. E. 2d 874, where the statement erroneously admitted concerned the crime for which the defendant was being tried.

This is not to say that constitutional error in the admission of an incriminating statement of an accused is always and automatically rendered harmless by the accused testifying concerning the same facts that were in the statement. If the constitutional error compels the defendant to take the stand in order to deny or explain away the statement, or substantially restricts the choice of tactics by defendant's counsel in presenting his defense, then we would not say the error was harmless beyond a reasonable

doubt. It appears from the record of the Appellant's testimony on direct examination in this case, that none of the above factors were present.

On direct examination, after some preliminary questions, we find this:

> "Q. Now Judy, you have been in the Courtroom while the state has presented its evidence and have heard all of that evidence, is that correct?
>
> A. Yes, I have.
>
> Q. You heard the evidence presented by the state in relation to an assault on the body of the child, Edwin Greer, in May of 1966?
>
> A. Yes.
>
> Q. Will you tell the court what happened at that time."

Appellant then proceeded to tell the jury about the events surrounding the assault on Edwin Greer in greater detail than was included in the statements introduced by the State. The following portions of the record further indicate the tenor of the direct examination.

> "Q. And you had slapped him, is that right?
>
> A. Yes, I had.
>
> Q. The testimony here was, by the Police Officers, that you told them that it was once or twice; you were not sure whether you struck him the third time. Is that what you did tell them at that time?
>
> A. Yes, I did.
>
> Q. Then what did you do, if anything?
>
> . . . . .
>
> Q. Judy had you told your mother or anyone up to this time, that you had slapped or struck the child?
>
> A. No I hadn't said anything to anybody.
>
> Q. Alright. Go ahead.
>
> . . . . .

> Q. Did you tell her at that time that you had struck the baby?
>
> A. No, I didn't say anything to her.
>
> Q. Alright. Go ahead.
>
> . . . . .
>
> Q. Did the doctors question you in regard to how the baby might have received the injuries?
>
> A. Oh yes, that's right. Dr. Conway asked me did I know how it happened and I also told him the same thing, that the baby had fell off the couch.
>
> Q. Why did you tell him that?
>
> A. Well, I had got scared by listening to this nurse talking downstairs.
>
> Q. Alright, go ahead."

The Appellant is obviously being allowed and encouraged to tell the full story in her own way without any tailoring of that story by counsel to explain away the statements of Appellant introduced by the State. Appellant also testifies about the giving of those statements.

> "Q. Alright, go ahead.
>
> A. I told him what happened up to and including Friday night the 20th, the night before we went to the hospital and I told him all I could remember about what happened that night, I mean after we go to the hospital.
>
> Q. Is that in substance what you testified to awhile ago in regard to striking the baby?
>
> A. Yes. The only thing he didn't put in my statement was that I told him that I didn't actually remember hitting the baby, but I knew it had to be me because nobody was there and my hand was burning. Well, he put that part in there . . . and the baby's face was sort of red and I told him that I'd got scared and picked him up.
>
> . . . . .

> "Q. Then State's Exhibit Number Two, Judy, is the statement which you gave to the police and signed, back on the 21st of May, 1966, is that right?
>
> A. Yes, this is it.
>
> Q. After he completed typing the statement and you signed it, did they have any additional conversation with you there at that time?
>
> A. I didn't sign it right after they typed it up. He had me read it to myself and then he had me read it back to them.
>
> Q. And did you do that?
>
> A. Yes, I did.
>
> Q. And then you signed it, is that correct?
>
> A. Then I signed it, yes."

Even when Appellant is testifying about the events of October 21, 1966, she freely refers to the May assault.

> "Q. Now then, what did he [Detective Wiram] say next if he said anything?
>
> A. He asked me to tell him what happened in May when I had got arrested and I told him and how I had been sent to Logansport.
>
> Q. Did you tell him as to what happened in May in accordance with what you said here in the Courtroom this morning?
>
> A. Yes."

On re-direct examination Appellant testifies as follows:

> "Q. You say that Detective Ford and Bealmear were the ones that questioned you in regard to the occurrence last May, is that correct?
>
> A. Yes.
>
> Q. Did they harass you in any way in obtaining that statement?
>
> A. No, they were very nice to me.

Q. Did they make accusations against you that you had to deny?

A. No.

Q. So that when you told them that you did strike the baby, you were telling the truth, is that right?

A. Yes, I was."

It is clear from the record that the Appellant testified freely and in detail about the events of May 20, 1966. On direct examination she repeated the same facts contained in the statements introduced by the State in even greater detail and she affirmed the truth of those facts several times. There is no hint that the admission of those statements compelled the Appellant to take the stand in order to qualify or explain away the facts in those statements. On the contrary, the Appellant repeatedly affirmed the truth of them. Neither is there any hint that the admission of the statements restricted the choice of tactics of Appellant's counsel in presenting her defense. He continually induced Appellant to tell her story fully and in her own way. The tenor of Appellant's testimony shows that if it was a federal constitutional error to admit the statements in evidence, it was harmless beyond a reasonable doubt.

Appellant's third argument is that it was error for the prosecutor, in his opening statement to refer to the Appellant's prior assault on Edwin Greer and her statements to the police about that assault. The reason offered is that "at that stage of the trial, there was no way that the prosecutor or the court could know with any certainty that evidence of the prior injuries received by the child and the statement or admission by the Appellant relating as to how those injuries occurred, would be admitted into evidence."

Appellant cites only *Bolden v. State* (1927), 199 Ind. 160, 155 N. E. 824, in support of his argument. In that case the prosecutor in his opening statement read off a list of several prior offenses committed by the defendant. The court said:

"In a criminal action, it is reversible error for a court, over objection, to permit a Prosecuting Attorney in his opening statement to attack the character of the accused by charging the commission of other crimes." 199 Ind. at 164.

There the prosecutor mentioned other crimes to *impeach* the defendant before the trial and before he took the stand. In this case the prosecutor mentioned the prior assault as *evidence* he would offer, not to *impeach* the Appellant, but to prove intent and malice. In Burns' § 9-1805, it says:

"The jury being impaneled and sworn, the trial shall proceed in the following order:

"First. The prosecuting attorney must state the case of the prosecution and briefly state the evidence by which he expects to support it. . . ."

Evidence of prior assaults on the same victim is admissible in a murder trial to prove intent and malice. *Wahl v. State, supra; Peats v. State, supra.*

The only source of uncertainty for the prosecutor would have been whether or not the evidence was admissible under the *Miranda* rule. At the time of the trial the *Miranda* requirement had not yet been held to cover statements about a crime other than the one for which the Appellant was then being tried. The prosecutor was not required to anticipate such a holding. Even if it was error to permit the prosecutor to make such an opening statement, it was harmless error for the same reasons which rendered the admission into evidence of the Appellant's statements about the assault harmless.

Judgment affirmed.

Arterburn, Givan, and Hunter, JJ., concur.

Jackson, J., dissents with opinion.

## DISSENTING OPINION.

JACKSON, J.—I am unable to agree with the determination reached in the majority opinion and respectfully dissent thereto for the following reasons.

It appears from the record that on May 20, 1966, some six months prior to the date alleged in the indictment herein, appellant had committed an assault upon this same child, Edwin Greer. That as a result thereof she was thereafter confined in the Logansport State Hospital, one of the institutions for the insane of this State. Such confinement, in view of the criminal prosecution in the case at bar, together with the fact that the State at the very beginning of the trial herein referred to the prior assault of May 20, 1966, raises grave doubt as to the mental capacity of appellant on the 21st day of October, 1966, to commit the crime charged.

Ordinarily such an issue would be raised by the defendant, but here the State saw fit to do so by and through its witness, Samuel Greer, Sr. who in direct examination in the case in chief was questioned about and testified, over appellant's objection, to the contents of a letter written to him by appellant while she was at Logansport State Hospital.

In my opinion, the State having for some reason seen fit to raise the ghost had the obligation to lay it by a showing that prior to October 21, 1966, appellant had either been discharged as cured, not dangerous or that she was improperly confined in the Logansport State Hospital in the first place. The State having failed to discharge that duty, this cause should be reversed and remanded with instructions to grant appellant a new trial.

NOTE.—Reported in 245 N. E. 2d 158.