Harris v. State.

## HARRIS v. THE STATE.

[No. 19,276.   Filed October 2, 1900.]

TRIAL.—*Jury.—Telegram to Juror.—Criminal Law.*—A cause will not be reversed because of the action of the court in informing one of the jurors in the presence and hearing of the other jurors that he had a telegram for him from his wife, and that he had answered it, telling her that her husband would be home as soon as the trial was concluded, where the nature of the telegram is not disclosed by the record.  *pp. 267, 268.*

INSTRUCTIONS.—*Reasonable Doubt.—Criminal Law.—Harmless Error.*—A criminal cause will not be reversed because of a defective instruction on the question of reasonable doubt, where the charge was not impressed with affirmative error, but was incomplete or obscure, and the court was not requested to give an instruction embracing a more complete exposition of the law relative to the question, and it is not shown that the complainant was prejudiced to any extent in any of his substantial rights.  *pp. 268-271.*

SAME.—*Malice.—Criminal Law.*—An instruction that malice as used in the statutes defining murder has a technical meaning, including not only anger, hatred, and revenge, but every other unlawful and unjustifiable motive, that it is not confined to ill will toward one or more individual persons, but is used and intended to denote an action growing from any wicked or corrupt motive—a thing done with bad or malicious intent—where the fact has been attended by such circumstances as carry in them the plain indication of a heart regardless of social duty, and fatally bent on mischief, is a proper definition of malice, and the further statement therein that "malice is implied from any deliberate and cruel act against another, however sudden," was not erroneous as invading the province of the jury.  *pp. 271, 272.*

Harris *v.* State.

INSTRUCTIONS.—*Malice.*—*Criminal Law.*—Where in a prosecution for murder it was shown that after defendant had fired the fatal shot and the deceased had staggered and retreated from twenty to forty feet and ceased to make any demonstration or effort to inflict injury, that defendant stood up in his buggy and deliberately fired another shot at deceased, it was not error to instruct the jury that they might consider the circumstances of the firing of the second shot along with other circumstances as tending to show malice in the mind of defendant.   *pp. 272-274.*

SAME.—*Evidence.*—A cause will not be reversed on the ground that certain instructions given were not applicable to the evidence, where there was some evidence to which the instructions complained of were applicable.   *p. 274.*

SAME.—*Refusal to Give.*—*Appeal and Error.*—A cause will not be reversed because of the action of the court in refusing to give an instruction where it does not affirmatively appear from the record that the instruction was tendered before the commencement of the argument with a request that it be given.   *p. 275.*

CRIMINAL LAW.—*Homicide.*—A verdict finding defendant guilty of murder in the second degree will not be disturbed on appeal on the evidence, where it was shown that defendant was sitting in his buggy near the sidewalk engaged in a conversation with another person, and, upon seeing deceased pass along the sidewalk, accosted him with vile language which so angered deceased that he came over to where defendant was sitting, when defendant struck him with a horsewhip and deceased grabbed the whip and struck defendant, whereupon defendant drew a revolver and fired the fatal shot, and when deceased was reeling from the effects of the shot, defendant stood up in his buggy, fired the second shot, and drove away saying that he had fixed or settled him.   *pp. 275, 276.*

SAME.—*Impaneling Grand Jury.*—*Appeal and Error.*—A cause will not be reversed because of the action of the court in denying defendant's motion in arrest of judgment based upon the ground that the record did not show that the grand jury which returned the verdict was duly impaneled, sworn, and charged, where the record showed that the grand jury of the county returned into court the indictment upon which defendant was tried, and that defendant was arraigned thereon and entered a plea of not guilty, without imposing any objection to the impaneling of the jury.   *p. 276.*

From the Lawrence Circuit Court.   *Affirmed.*

*O. H. Montgomery, H. Morris, M. B. Hottel, J. M. Lewis, Jr., C. C. Matson* and *J. Giles,* for appellant.

*W. L. Taylor,* Attorney-General, *J. A. Zaring, Merrill Moores* and *C. C. Hadley,* for State.

JORDAN, J.—Appellant was charged in the Jackson Circuit Court with the premeditated murder of George Brown. The cause was venued to the Lawrence Circuit Court, wherein, on a trial before a jury, he was convicted of murder in the second degree, and, over his motion for a new trial, was sentenced to be imprisoned during his natural life. Appellant admitted in the lower court that he shot and killed the deceased, but claimed that he was justified in so doing upon the ground of self-defense. His counsel present several alleged errors upon which they seek a reversal of the judgment below.

It is disclosed by a bill of exceptions that on the day the trial was concluded, and after the court had instructed the jury, but before they had retired to deliberate upon a verdict, and while the jurors were still occupying their seats in open court, the trial judge, on his own motion and without the knowledge of the defendant of his purpose to do so, called Jonathan Wright, one of the jurors, to the court's desk, and there informed said Wright, in a tone of voice so as to be distinctly heard by the other jurors, that he, the judge, had a telegram for him, and then handed the telegram to Wright, who opened it, and read it, and then returned it to the judge; that the latter then stated, so as to be heard by all of the jurors, that he, the judge, had knowledge of the contents of the telegram, and that he had wired Mrs. Wright, wife of the juror, that the cause on trial was nearing its close, and that her husband would be at home as soon as the trial was concluded; and that thereupon the jury retired to their room.

It is insisted by appellant's learned counsel that Wright's associates upon the jury panel must have known and understood, from the statement made by the court to said juror, that some serious emergency had arisen which required his presence at home as soon as possible, and that Wright must have informed his fellow jurors in regard to the contents of the telegram upon the retirement of the jury to their

Harris *v.* State.

room; and that the jury, in their zeal to accommodate their associate and permit him to return to his home as soon as possible, were induced to act hastily in making a verdict, and thereby were prevented from exercising due deliberation and from giving the questions involved their due consideration. What the telegram contained, or for what reason the juror's wife desired his presence at home is not disclosed by the bill of exceptions, and therefore we are not advised in regard to its contents, or the emergency, if any, which required the presence of the juror at his home, unless we accept what is shown by the affidavit of appellant filed in support of his motion for a new trial. This document, however, has not been made a part of the record by a bill of exceptions, and, hence, we are not permitted to review the statements of the affiant therein, or give them any consideration whatever. Neither are we advised by the record as to whether or no the contents of the telegram were in any manner disclosed by Wright to his associates after they retired to the jury room. Therefore, under the circumstances, we are left wholly to conjecture in respect both to the matter which required the presence of Wright at home and in regard to its communication to the other members of the jury. Certainly, under such circumstances, this court is not in a position to determine as to whether the information contained in the telegram in any manner operated to influence either Wright or any of his associates in his or their deliberations, or in any way tended to interfere with them in the due consideration of the questions involved upon the trial. This court can not, in the consideration of questions upon appeals, indulge in unwarranted presumptions. *Messenger* v. *State,* 152 Ind. 227. There being nothing in the record to support appellant's contention upon this specification of error, it is therefore dismissed without further consideration.

It is next urged that the trial court erred in giving certain instructions to the jury. Charge number five, which

relates to the law upon the question of reasonable doubt in a criminal case, is severely criticised and condemned as erroneous by counsel for appellant. This charge is as follows: "No. 5. What is a reasonable doubt? This does not mean that the proof must be free from all doubt. Proof is to be deemed to be beyond reasonable doubt when the evidence is sufficient to impress the judgment of an ordinarily prudent man with a conviction on which he would act without hesitation in his most important concerns in life. You are not to go beyond the evidence to hunt for doubts. A doubt, to justify an acquittal, must be reasonable, and must arise from a fair and impartial consideration of all of the evidence in the case." In addition to the above instruction, the court also gave to the jury, as bearing upon the question of the force and effect of a reasonable doubt, the following: "The defendant comes into court and for plea says that he is 'not guilty', and the court instructs you that it is incumbent on the prosecution to prove every material allegation of the indictment as therein charged. Nothing is to be presumed or taken by implication against the defendant, but every presumption of the law is in favor of his innocence; and in order to convict him of the crime alleged in the indictment, or of any lesser crime included in it, every material fact necessary to constitute such crime must be proved beyond a reasonable doubt, and if the jury entertain any reasonable doubt upon any material fact necessary to constitute the crime, it is your duty, gentlemen, to resolve that doubt in favor of the defendant, and acquit him. When there is a reasonable doubt in which of two or more degrees of an offense a defendant is guilty, he must be convicted of the lowest degree only." Also the following, numbers three and five, which were given at the request of appellant: "No. 3. When the taking of life is sought to be justified on the ground of self-defense, it is not incumbent on the accused to satisfy the jury that the killing was justifiable, but, if the evidence on that question is sufficient

to raise a reasonable doubt in the minds of the jury as to whether the defendant was justifiable, then the defendant is entitled to an acquittal." "No. 5. It is incumbent upon the State to establish the guilt of the defendant of some offense embraced within the indictment to the exclusion of every reasonable doubt in the mind of each of you before you can return a verdict of guilty. The minds of each and all of you must concur in your verdict and if any one of you has a reasonable doubt of defendant's guilt or a reasonable doubt as to whether he was justifiable or excusable in what he did, you can not convict."

The objection which counsel for appellant present against instruction number five is that it is not sufficiently accurate and complete in its definition of what constitutes a reasonable doubt in a criminal prosecution. It is contended that the charge is faulty for two reasons: (1) Because it omits to embody the statement to the jury, to wit,—"As prudent men you would feel safe to act upon such conviction in matters of the highest concern and importance to your own dearest and most important interests, and under such circumstances where there was no compulsion upon you to act at all"; (2) because it states that the doubt must arise from a fair and impartial consideration of all of the evidence in the case.

It is contended by counsel that a reasonable doubt may not only arise out of the evidence, but may also be created in the minds of the jury by reason of the lack of evidence. This latter contention is well supported by the decisions of this court; and to this extent, at least, it may be said that the charge in question is too narrow. The instruction, considered as an entirety, does not fully measure up to the test given in a long line of cases like *Bradley* v. *State,* 31 Ind. 492; *Jarrell* v. *State,* 58 Ind. 293; *Knight* v. *State,* 70 Ind. 375; *Garfield* v. *State,* 74 Ind. 60; *Behymer* v. *State,* 95 Ind. 140; *Brown* v. *State,* 105 Ind. 385; *Farley* v. *State,* 127 Ind. 419, and others which might be cited. Appellant

seems, however, at the trial to have been satisfied with this instruction, as it does not appear that he tendered and requested the trial court to give any more specific or broader charge in respect to what was required to constitute reasonable doubt in the minds of the jury. It can not be affirmed that the charge in question is impressed with affirmative error. Its infirmity consists in its being incomplete or obscure, but doubtless this would have been remedied if appellant had requested the trial court to give an instruction embracing a more complete or broader exposition of the law relative to the question of reasonable doubt. This, as we have previously said, appellant omitted to do, and, hence, under the circumstances, he does not occupy a favorable attitude to complain of the infirmities which he imputes to the instruction in dispute. When this particular charge is considered along with the others which we have heretofore set out, we do not believe that appellant was to any extent prejudiced in any of his substantial rights. The rule, as affirmed by this court, is that, in order to justify a reversal in a criminal case for a mere inaccurate definition of what is required under the law to constitute reasonable doubt, it must plainly appear that the defendant was prejudiced thereby in his substantial rights. *Heyl* v. *State,* 109 Ind. 589. As we view the evidence in this case, we are satisfied that the instruction complained of was not influential in misleading the jury to the detriment of appellant.

The court, at the request of the State, gave to the jury the following instruction: "Malice, in law, and as used in the statutes defining murder, has a technical meaning, including not only anger, hatred, and revenge, but every other unlawful and unjustifiable motive. It is not confined to ill will towards one or more individual persons, but is used and intended to denote an action growing from any wicked and corrupt motive,—a thing done with bad or malicious intent,—where the fact has been attended by such circumstances as carry in them the plain indication of a heart re-

gardless of social duty, and fatally bent on mischief; and therefore malice is implied from any deliberate and cruel act against another, however sudden."

This latter charge is criticised upon the ground that it is not a correct statement of the law in respect to the question of malice in a criminal case. It is substantially the same as an instruction given upon that question in the celebrated trial of John W. Webster upon the charge of the murder of Dr. Parkman. See *Commonwealth* v. *Webster,* 5 Cush. 293. The definition of malice as therein given. was referred to with approval and adopted by this court in *Coghill* v. *State,* 37 Ind. 111; and was again approved in *McDermott* v. *State,* 89 Ind. 187. The instruction in question, considered in its entirety, in our opinion, states the law correctly. The part more especially criticised by counsel for appellant is the latter part, wherein it is stated that "malice is implied from any deliberate and cruel act against another however sudden". It is contended that this part of the charge invades the province of the jury. This error, in our judgment, can not be successfully imputed to the instruction. The court thereby merely advises the jury that malice, as a legal inference, may be deduced from the perpetration of any *deliberate and cruel act* by one person against another. (Our italics.) It is certainly evident that such an inference may be drawn from an act or deed so committed, and this statement to the jury by the court, in regard to such a legal proposition, can not be said to be an invasion upon any of their rights. Of course, the inference arising from such an established fact or facts is not conclusive, but may be rebutted by countervailing evidence, and in this light, in the absence of anything to the contrary, we must presume the charge was so understood by the jury.

The trial court also gave, at the request of the State the following instruction: "If you find from the evidence beyond a reasonable doubt that the defendant, Harris, had inflicted upon George Brown, the deceased, a mortal wound,

by shooting said Brown with a pistol, and the said George Brown, immediately after the infliction of said injury, staggered, retreated, or traveled away from the defendant, and ceased to make any demonstration toward defendant, or to make any effort to inflict injury upon the defendant, and immediately thereafter, but after defendant had become separated from said George Brown a distance of from twenty to forty feet, the said defendant arose in his buggy, and deliberately discharged a second shot at or in the direction of said Brown, whether said second shot did or did not strike the person of said Brown, you may consider the circumstances of the firing of said second shot, along with all the other circumstances of the case so proved, as tending to show malice in the mind of the defendant."

It is claimed by appellant that, by reason of the fact that the first shot fired by him was the fatal one, consequently the second shot could have no bearing upon the question of malice relative to the firing of the fatal shot. It is contended that the inquiry was to be addressed solely to the motive which prompted the accused to fire the fatal shot. It is insisted that if the latter was justified upon the grounds of self-defense, then the act of the defendant in firing the second, which it is claimed did not hit the deceased, though reprehensible from a moral view, can have no legitimate bearing upon the issue of malice. There is no merit in this insistence, and we are of the opinion that no error was committed by giving the instruction in controversy. The evidence, it is true, discloses that the first shot was the fatal one. It is also shown that after appellant had fired it, and after the deceased, in the very agony of death, had staggered away from appellant to a distance of some twenty or forty feet, and was apparently in the act of falling, appellant stood up in his buggy, and deliberately fired the second shot at him. The charge presented against appellant, and which was in issue upon the trial, was that of

a malicious murder. The burden of proving malice was upon the State, and it had the right to have the jury consider all of the circumstances bearing upon this feature of the case, regardless of the fact as to whether such circumstances happened before or after the homicide.

There is a conflict in the evidence as to whether the second shot hit the deceased, but it is apparently shown by the evidence that this latter shot was fired by the appellant without any necessity or excuse for doing so. It was therefore proper for the jury to consider the firing of this shot, along with the other circumstances in the case, as tending to show, or, rather, as bearing upon the question of malice, which, as the State claimed, caused or prompted appellant to commit the homicide.

There is no merit in the contention of appellant's counsel that the effect of the instruction was to advise the jury that, if there was an absence of malice upon the part of the accused when he fired the first shot, then the jury might consider the firing of the second as evidence of malice. If, however, it was apparent to appellant, as the evidence we think discloses, that he had mortally wounded the deceased, and when the latter was staggering under the effects of the first shot, and retreating from the defendant, he, without any necessity therefor, deliberately fired the second shot at the deceased it would seem that this fact, under the circumstances, was proper evidence to be considered by the jury in determining whether appellant, in killing the deceased, was actuated by malice, and not in an honest belief that it was necessary for him to do so in the exercise of his right of self-defense.

Objections are urged to instructions three, four, and six, given by the court at the request of the State. The insistence is that these are not applicable to the evidence. As there is some evidence to which these instructions are applicable, this contention can not be sustained. *Reed* v. *State*, 141 Ind. 116; *Hanes* v. *State, ante,* 112.

Several other instructions given by the court upon the law relative to self-defense are criticised by counsel for appellant. We have carefully examined these, and also the entire charge of the trial court upon the question of self-defense, and, when the instructions given upon this feature of the case are considered as a whole, they state the law as favorably for defendant as he, under the evidence, had any right to demand.

Error is also assigned and argued upon the refusal of the court to give instruction number eight. We can not review the action of the trial court in refusing this instruction, for the reason that it does not affirmatively appear from the record that it was tendered to the court by appellant with the request that it be given, before the commencement of the argument. This the statute requires. §1892 Burns 1894, Cl. 6. A party in a criminal cause who desires to avail himself of this statutory right must comply with the conditions therein imposed. If he desires that special instructions be given upon any feature or question in the case, he should, before the commencement of the argument, prepare, sign, and present such instructions to the court with the request that they be given. Otherwise, the court is justified in refusing them; and upon appeal to this court, if error is predicated upon such refusal, in the absence of any affirmative showing to the contrary, we must indulge in the presumption that the instruction or instructions in question were refused for the reason that they were not seasonably tendered to the lower court as required by the statute. This rule is firmly settled by repeated decisions of this court.

Counsel for appellant next complain that the evidence is not sufficient to support the verdict. We would not be justified in disturbing the judgment upon the evidence. It is true that there is a conflict in the testimony of the witnesses, especially as to which one of the parties, appellant or deceased, commenced the assault. The uncontradicted evidence shows that the deceased was passing peacefully along

the sidewalk in the city of Seymour. Appellant, who, as it appears from the evidence, was, to an extent at least, under the influence of intoxicating liquor, was seated in his buggy near the sidewalk, engaged in a conversation with another person. Upon seeing the deceased pass along the street, he accosted him by using and applying to him vile and insulting language. This seems to have angered the deceased, and he came over to where the appellant was seated in his buggy. Witnesses testified upon the trial that appellant first assaulted the deceased with a horsewhip; that the latter grabbed the whip from appellant, and struck him with it; that thereupon appellant drew a revolver, which he had in his coat pocket, and fired the fatal shot, and that when the deceased was reeling, as previously stated, from the effects of the shot, appellant stood up in his buggy and fired at him the second shot, and then drove away, saying, in substance, that he had "fixed or settled him". After the homicide he immediately fled from his home in Seymour, and went to the home of a relative, where he concealed himself for some time, until he was discovered and arrested by the officers who were searching for him.

It is next and finally insisted that the court erred in denying appellant's motion in arrest of judgment. One of the grounds assigned in this motion for arrest was that the record did not show that the grand jury which returned the indictment was duly impaneled, sworn, and charged. It is insisted that for this reason the court had no jurisdiction. The record does, however, show that a grand jury of the Jackson Circuit Court returned into that court the indictment upon which the defendant was tried; that he was arraigned thereon, and entered his plea of "Not Guilty". This is sufficient to show that the indictment was legally returned against appellant by the proper grand jury, and, if there was anything illegal or irregular in respect to the impaneling of the grand jury, appellant should have interposed such objections by plea in abatement. *Henning* v. *State,* 106 Ind. 386, 55 Am. Rep. 756.

We have carefully examined all of the questions presented by counsel for appellant, and are satisfied that there is no such error shown by the record as would authorize a reversal of the judgment. The judgment is therefore affirmed.