Cushing, J.
George Allison was convicted of murder in the second degree for killing John Klump. The crime was committed in Gerdes saloon, Sixth and Smith streets, October 10, 1918, at about 8:30 p. m.
Klump was shot. The bullet entered his body on the right side, passing through the right arm, a little to the rear, fracturing the third rib, passing *218 through both lungs, and out of the body between the first and second ribs. The direction of the bullet was a little forward, to the left, and slightly upward.
When found th'e body was lying through a doorway, the feet and legs behind the bar, the trunk in an adjoining room, the arms above the head; and a short distance from his hands was a revolver with all the chambers loaded.
There was but one shot fired. Officers Botts and Lauman were at the opposite corner of Sixth and Smith streets. They were attracted by the shot and hurried to the saloon. Officer Botts crossed Sixth street to the front of the saloon. As he ■stepped on the sidewalk two colored men came from behind the blind at the saloon-door. The man who ■came out first had a revolver in his hand. He leveled it at officer Botts, who halted to get his own revolver. The colored man ran and officer Botts shot at him as he fled, when at about the middle of Sixth street, but missed him.
The record establishes that the man who leveled his revolver at officer Botts shot and killed John Klump.
Plaintiff in error was arrested, indicted, tried and found guilty of murder in the second degree. This proceeding is prosecuted to reverse the verdict and judgment of the court below.
Two questions are urged by counsel for plaintiff in error:
First: That as no testimony was offered to show how and under what circumstances the shot was fired that killed Klump, there was a failure of *219 proof that the killing was done purposely and maliciously.
Second: That the identification of Allison was such that the verdict is against the weight of the evidence.
The law of Ohio is well settled that the purpose to kill may he deduced from the circumstances, the manner of inflicting the wound, the instrument used and its tendency to destroy life; if palpably calculated to take life, the party is supposed to so intend. State v. Gardiner, Wright, 392, and Cottell v. State, 12 C. C., 467, 473.
Also when the fact of the killing is proved, malice may be presumed. Davis v. State, 25 Ohio St., 369; Wharton on Homicide (3 ed.), page 115, and Harris v. State, 155 Ind., 265.
In Erwin v. State, 29 Ohio St., 186 at 191, the court hold:
“As an abstract proposition, when the circumstances of a homicide are not known, further than the mere fact that the death was caused by the use of a deadly weapon, we do not deny that the jury may, from such fact alone, infer both malice and purpose to kill.”
The evidence of the killing was circumstantial. In this connection the question of identification becomes important.
As stated, there was but one shot fired in the saloon and that caused the death of Klump. The shot was fired when Klump was turning toward or away from the person who fired it. The location of the wound and the direction the bullet took in passing through the body establish that fact, and also that the gun user was not being attacked at *220 the time he fired the shot. The man who fired the ■shot ran from the saloon with a revolver in his hand. Officer Botts was hurrying to the scene of the trouble; he met the man with the revolver on the sidewalk just after he came out of the saloon. The question is, Was this defendant that man? (Did the officer have such a view of him as to be .able to identify him? The lamps on the street and in the buildings made a good light. The gun user was directly in front of the officer, with his gun pointed at him. This was an implied threat to use it if the officer moved in the discharge of his duty. The officer knew that he was facing a desperate man, or one driven to desperation, and the time that passed while they were facing each other was long enough to enable the skilled'eye of the officer to take in the man’s features, size, dress and his weapon. This the officer did and fully described them in his testimony to the jury.
Botts was corroborated in his identification of Allison by a woman, Pearl Thomas. The attempts to discredit her as a witness consisted in asking insinuating questions which she answered in the negative. No attempt was made to impeach her by testimony, except by the testimony of Oliver Williams and Cora Ferguson. Williams testified that he and Pearl Thomas were on the steps at 514 West Sixth street when the shot was fired in the ■saloon, that after the shooting Pearl Thomas went to the corner. He undertook to say that from the time the shot was fired until she went to the corner was five or seven minutes. The Ferguson woman’s testimony was practically the same. It related only to the time. The ability to judge time was a *221 matter to be considered by the jury in view of all the evidence. All the witnesses agreed that Pearl Thomas was at the place fixed by her.
It was urged that the jury had a right to consider the flight of the defendant as some evidence of conscious guilt. Flight from a place where a murder has just been committed may be evidence of guilt. It does not create a presumption. Hickory v. United States, 160 U. S., 408; Alberty v. United States, 162 U. S., 499; Starr v. United States, 164 U. S., 627; Territory of New Mexico v. Lucero, 16 N. M., 652, and note to same, 39 L. R. A., N. S., 58.
Flight, when accompanied by acts of violence, such as resisting an officer, pointing a revolver at him in order to make good his escape, and passing through a crowd without using his weapon or threatening the bystanders, adds to flight circumstances more convincing than flight itself.
The only other question in the case is the defense interposed by the defendant of an alibi. To support this, sixteen witnesses were offered by defendant. From the testimony of Allison and his witnesses it is certain that he was near the corner of Sixth and Smith streets, on Smith, about eight o’clock.
In support of the alibi, the defendant and his witnesses say that he went from Sixth and Smith streets to Delia Little’s home on Carlisle avenue, arriving there between seven and eight o’clock, remained there until nine o’clock, at which time he went to Sixth and Walnut streets, met a man by the name of Jefferson, talked with him for an hour, and returned to Sixth and Smith streets. *222 He lived in the neighborhood of Sixth and Smith streets. He was there a short time before the commission of this crime and he was back there about ten o’clock.
The case was tried twice. The first jury found the defendant guilty as charged, and the court, out of abundance of caution, set the verdict aside and gave the defendant a new trial. The second jury found him guilty as charged. Both juries saw the witnesses, heard them tell their stories, observed their demeanor on the witness stand, and were in a position to determine the weight and credibility of the evidence.
The judgment will be affirmed.

Judgment affirmed.

Hamilton, J., concurs.