JAMES MITCHELL BROWN *v.* STATE OF INDIANA.

[No. 376S75. Filed March 16, 1977.]

[Page content redacted]

*David W. Foley, Mullin, Foley & Gilroy,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, James Mitchell Brown, was convicted on September 24, 1975, of commission of or attempt to commit a felony while armed with a deadly weapon. Ind. Code § 35-12-1-1 (Burns 1975). The jury fixed a determinate sentence of imprisonment for twenty years. The Appellant filed his motion to correct errors on December 15, 1975. This appeal is taken from the denial of that motion on December 18, 1975.

I.

In order to set out the facts of this case, we consider first the contention that the Appellant's conviction was not supported by sufficient evidence. The evidence at trial revealed that on June 30, 1975, Charlie Dye's Liquor Locker in Indianapolis was robbed by two men at about 10:30 p.m. While one man stood at the front of the store's counter and held a gun on those present, the other man took money from the store cash register. Several cartons of cigarettes and a watch from one of the store's employees were also taken.

William Jones, the employee whose watch was stolen, identified the Appellant at trial as the robber holding the gun. Another eye-witness, Jane Boatmer, also identified the Appellant as one of the robbers. She also testified that she had seen the Appellant a number of times when he patronized the Knotty Pine Cafe, where she had worked. Her testimony further revealed that the other robber, who she could not identify, had a gun in his "back pocket."

Luther Nuckols, a bus driver for the Indianapolis Metro system, testified that on June 30, 1975, at 10:30 p.m., he was operating a bus and observed two men run out of a liquor store. They ran in front of his bus and into an automobile. After seeing one of the men take a pistol out of a sack and put it in his belt, he wrote down the license number of the car and notified police. He described the car as a blue 1964 or 1965 Valiant. Indianapolis police subsequently stopped an automobile matching that description and bearing the license number copied by Nuckols. The Appellant was one of the men in that car. He was identified at the scene of his arrest by one of the robbery victims as one of the perpetrators of that crime.

In reviewing the sufficiency of evidence, this Court does not judge the credibility of witnesses or weigh evidence. We look at the evidence most favorable to the State and the reasonable inferences to be drawn from that evidence. A verdict will not be disturbed if there

is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Young* v. *State,* (1975) 264 Ind. 14, 332 N.E.2d 103; *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686; *Jackson* v. *State,* (1971) 257 Ind. 477, 275 N.E.2d 538.

The Appellant challenges the sufficiency of the evidence in this case on two grounds. First, it is asserted that the evidence failed to establish the identity of the robbers. Second, it is urged that the use of a deadly weapon was not established. We find no merit in these contentions.

In arguing that the identity of the robbers was not established, the Appellant attacks the testimony of the witnesses placing the Appellant at the scene of the crime. We are asked essentially to judge the credibility of these witnesses and weigh the evidence accordingly. This we cannot do. In support of the argument that the use of a deadly weapon was not established, it is pointed out that no weapon was admitted into evidence. While the State must prove the use of a deadly weapon to prove the crime for which the Appellant was convicted, Ind. Code § 35-12-1-1 (Burns 1975), it is not necessary to introduce that weapon into evidence. *See Henderson* v. *State,* (1976) 264 Ind. 334, 343 N.E.2d 776.

II.

On September 17, 1975, the Appellant filed a verified petition for change of venue from the judge. The trial court denied this petition on September 24, 1975. The Appellant urges reversible error in the denial of this petition on two grounds. First, he contends that the ten day period of Criminal Rule 12 in which such a change of judge must be granted had not expired. Second, it is contended that the petition should not have been denied without a hearing.

Under Ind. R. Crim. P. 12, an application for change of judge is to be filed within ten days after a plea of not guilty.

When such timely application is made, the first such motion by a defendant must be granted as of right. *State ex rel. Benjamin* v. *Criminal Court of Marion County,* (1976) 264 Ind. 191, 341 N.E.2d 495. In this case, however, application was not made in a timely fashion. The Appellant entered a plea of not guilty on July 9, 1975. As already noted, his petition for change of judge was not filed until September 17, 1975.

The Appellant offered to plead guilty on August 8, 1975, and was told at the time by the trial court that it would not be bound by the recommendation of the State. The Appellant then changed his mind. Then again, on September 9, 1975, the Appellant offered to plead guilty and the court told him it would not be bound by a sentence of ten years recommended by the State. The Appellant then again withdrew his plea of guilty. These offers to plead guilty do not extend the time within which a defendant must ask for a change of venue. To interpret the rule otherwise is to invite circumvention through the manipulation of pleas.

Appellant further contends that he was improperly denied a hearing on his motion for change of venue which alleged as a basis thereof that the judge was prejudiced because he heard the defendant's tendered pleas of guilty which were withdrawn on August 8 and September 9. Ind. R. Crim. P. 12 provides for untimely applications only in a case where the defendant first obtains knowledge of the grounds for the change after the time has run. In this case the grounds for the change, the offers to plead guilty, was a self-serving act of the Appellant which could be manipulated as a basis for a claim of prejudice. There were no facts regarding the offers to plead guilty outside of those already before the court. A hearing would have added nothing in the way of additional evidence. It was not newly discovered evidence of prejudice within the contemplation of Ind. R. Crim. P. 12. All the evidence here was fully before the trial court when it made its ruling denying the motion for change of judge filed on September 17. The ruling of the trial court

may be reviewed only for an abuse of discretion. *Cade* v. *State,* (1976) 265 Ind. 144, 352 N.E.2d 473. We do not think the trial court abused its discretion in this case.

III.

The Appellant raises three issues related to the selection of his jury. Two of these issues center around Ind. Code § 35-1-30-4 (Burns 1975), which reads in part:

> "Challenges for cause.—The following shall be good causes for challenge to any person called as a juror in any criminal trial:
>
> * * *
>
> Fifteenth. If he is not a member of the regular panel, that he has served on a jury within twelve (12) months immediately preceding the trial."

The Appellant's first contention involving this statute is that the "regular panel exceeded the lawful number of twelve (12) members." This statement by itself fails to state any error prejudicial to the Appellant. It is based upon *Benadum* v. *State,* (1914) 182 Ind. 510, 107 N.E. 8, a case which appears sufficiently confused to merit only brief mention. That case does indeed state that the "regular panel" cannot be composed of more than twelve members. The citation in that decision to statutory provision for the number of jurors which are to serve on a criminal jury, presently Ind. Code § 35-1-30-1 (Burns 1975), indicates that the terms "jury" and "regular panel" were being used interchangeably. This is not correct and the Appellant's reliance on *Benadum* is misplaced.

The term "regular panel" refers to the list of prospective jurors called pursuant to statute from which a jury is selected. *Calvert* v. *State,* (1968) 251 Ind. 119, 239 N.E.2d 697; Ind. Code § 34-1-19-1 (Burns 1973). As many persons are to be summoned to serve on a jury panel as the trial court shall specify. Ind. Code § 33-15-22-1 (Burns 1975). This number may certainly exceed the number of persons needed to sit on a jury itself.

The Appellant also argues that challenges for cause to two members of his jury were erroneously overruled because they had prior jury experience within the past year. The Appellant states that they were not part of the regular panel, and we can only guess that this is based on the supposition that the regular panel can consist of no more than twelve members. We think it best to end this tangled argument by noting that the record shows that all of the prospective jurors of this trial were members of the regular panel.

The third contention regarding the composition of the Appellant's jury is that the Appellant's "rights were violated

> since the jury was composed of persons who had immediate prior jury service and who were willing and eager to serve."

The jury service complained of here occurred in the same term of service as the trial of this cause. When a juror is summoned to present himself for jury duty, it is expected that he or she may serve on a jury in more than one case during his or her term of service. Hence the exception of § 35-1-30-4, "[i]f he is not a member of the regular panel. . . ." The prior jury service of the jurors in this case would not, by itself, disqualify them from service in this case.

The assertion that the jurors in this case were "willing and eager" to serve stems from the jury selection process employed by the trial court. The record shows that approximately one thousand summonses were issued by the trial court to begin the selection process. A questionnaire was included with each summons, to be filled out and returned by the person summoned. Each questionnaire provided for a statement of whether the summoned person thought he or she should not serve. If a reason for not serving was stated, the person was automatically excused from service. In this fashion, the original one thousand persons summoned in this case was reduced to approximately two hundred and fifty prospective jurors. This panel of two hundred and fifty was divided into groups of about thirty, which rotated for service at trials. The

Appellant's jury was selected from a group of thirty-two prospective jurors who were, as described by the trial court, "willing to serve."

We can find nothing wrong with this jury selection process. The Appellant's contention is based upon *Christie* v. *State,* (1873) 44 Ind. 408, which concerns the challenge for cause statute just discussed. The *Christie* decision states that one object of the statutory provision was to avert the evils arising from an overwillingness to serve as a juror. We do not think that this language is applicable to the trial of the Appellant and find no merit in the argument it is represented to support.

IV.

The Appellant objected at trial to Court's Instruction 3P, concerning the State's burden of proof and the presumption of innocence of the accused, on the ground that it did not properly define "reasonable doubt." At the same time, he tendered an instruction defining that concept. It is urged that the refusal of this tendered instruction, coupled with the inadequacy of that given by the trial court, was reversible error.

The definition of reasonable doubt contained in Court's Instruction 3P reads:

> "A reasonable doubt is not a fanciful doubt. It is a doubt which arises from the evidence, the lack of evidence or a conflict in the evidence.
>
> It is a doubt which would disturb the conscience of a resolute and decent person who is sincerely devoted to justice for everyone, without regard to his or her status in life or society."

The Appellant's contention is essentially that this instruction is not complete. This allegation of omission is based upon language quoted in *Greer* v. *State,* (1969) 252 Ind. 20 at 30, 245 N.E.2d 158 at 163-164:

> "The rule of law defining proof beyond a reasonable doubt is well settled. It requires the trier of the facts to be so convinced by the evidence that as a prudent man he would feel safe to act upon such conviction in matters of the

highest concern and importance to his own nearest, dearest and most important interests in circumstances where there was no complusion or coercion to act at all. *Easton* v. *State* (1967), 248 Ind. 338, 228 N.E.2d 6; *Baker* v. *State* (1956), 236 Ind. 55, 138 N.E.2d 641; *Chambers* v. *State* (1953) 232 Ind. 349, 111 N.E.2d 816."

The Appellant's tendered instruction was patterned after this language. We are not persuaded, however, that the omission of this language must be considered reversible error.

This Court has long recognized that the term "reasonable doubt" is not easily defined. *See Siberry* v. *State,* (1892) 133 Ind. 677, 33 N.E. 681. While we think it wise to employ the language relied upon by the Appellant, which has been accepted over a number of years, we do not think that it can be said that *only* that language will adequately instruct a jury.

The definition of "reasonable doubt" employed by the trial court was correct. A reasonable doubt is not a fanciful doubt —it must be more than speculation or whim. *Pfeifer* v. *State,* (1972) 152 Ind. App. 315, 283 N.E.2d 567. And it is a doubt which arises from the evidence, the lack of evidence, or a conflict in the evidence. *Harris* v. *State,* (1900) 155 Ind. 265, 58 N.E. 75. The statement that it is a doubt "which would disturb the conscience of a resolute and decent person who is sincerely devoted to justice for everyone, without regard to his or her status in life or society" is, we think, adequate.

The Appellant also objected to Court's Instruction 2f, which concerned the statutory duty of the jury to fix a determinate sentence upon reaching a verdict of guilty of committing a felony while armed. Ind. Code § 35-12-1-1 (Burns 1975). That instruction reads as follows:

"You must first determine whether or not the accused is, beyond a reasonable doubt, guilty of a charged crime. Do this without any consideration of the prescribed penalties. If you find guilt, the prescribed penalty will be found preceding the suggested verdict form applicable to that particular crime.

> If the law gives you discretion in fixing the penalty, then you must discharge that grave responsibility.
> The range of penalties, prescribed by law, constitute a scale upon which you should grade the gravity of the defendant's conduct in the commission of that particular crime.
> In so doing, weigh the degree of disregard for the rights of others, the probability of reformation or resumption of criminal conduct, and the necessity of protecting society by deterrent example and by isolating the accused from criminal opportunities.
> Do not consider the financial, racial, religious or social status of the accused.
> Assess any penalty with resolution but without ill will, favoritism or bias."

The Appellant contends that the giving of this instruction was error because "this instruction gives the jurors no guidelines upon which to decide the penalty." He cites *Furman* v. *Georgia,* (1972) 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, in support of the proposition that the instruction's failings resulted in an arbitrarily chosen sentence. This argument is confused and without merit.

This instruction, despite the Appellant's argument to the contrary, attempts to provide guidelines for the jury in the penalty phase of its deliberations. The question to be asked regarding the instruction is not whether it should have stated guidelines, but whether those stated were adequate. *Furman* v. *Georgia, supra,* is of little help in determining the answer to this question. The *Furman* decision, which in a maze of concurring opinions found the death penalty to be unconstitutionally applied, is directly helpful only in determining the constitutionality of the statutory penalty-setting function and procedure of the jury in this case.[1] An attack on Ind. Code § 35-12-1-1 based upon the *Furman* decision has been rejected by our Court of Appeals. *Smith* v. *State,* (1975) Ind. App., 332 N.E.2d 121. We agree with the reasoning of that Court.

We find no error in the giving of this instruction. This instruction did not direct the jury to consider evidence out-

1. We note that the jury does not set punishment under the recently enacted Indiana Penal Code, to take effect July 1, 1977.

side the record. *See Gross* v. *State,* (1917) 186 Ind. 581, 117 N.E. 562. Any such interpretation was corrected by Court's Instruction 4P, which instructed the jury to determine facts only from evidence admitted in open court. An instruction more specific than the one given here would run the danger of stressing particular evidence and invading the province of the jury.

A jury, when it must set punishment in a case, is not provided with a presentence report. This Court has found this procedure to be constitutionally permissible. *Colvin* v. *State,* (1976) 264 Ind. 514, 346 N.E.2d 737; *Pulliam* v. *State,* (1976) 264 Ind. 381, 345 N.E.2d 229. As a result, a jury must of necessity refer to evidence of the character of the crime and attending circumstances as a basis for its penalty. We think the Court's instruction substantially directed the jury's attention to such factors.

A third argument regarding instructions contends that the trial court erred in refusing five instructions tendered by the defense on lesser included offenses. This issue has been waived because of the inadequacy of the argument presented. This entire argument consists of one paragraph. The instructions are set out in a petition to amend the Appellant's brief, which was granted by this Court, but are not treated or argued individually. No analysis of the contentions are made as to each tendered instruction. That petition's amendments merely repeat the paragraph contained in the brief with tendered instructions set out, but nothing more. No citation to statutory or case law is presented. Such bare presentation does not permit proper review by an appellate court. Ind. R. Ap. P. 8.3(A)(7); *Williams* v. *State,* (1973) 260 Ind. 543, 297 N.E.2d 805. We regret our inability to do so.

V.

Three remaining issues may be dealt with rather briefly. The first such issue is whether the trial court erred when it

failed to strike all testimony relating to a pistol. This is based on the failure of the prosecution to successfully introduce a gun, Exhibit No. 1, into evidence. When the prosecution failed to obtain admission of this exhibit, the trial court struck from the record all testimony relating to it and admonished the jury accordingly. The Appellant contends, however, that all testimony relating to *any* gun should have been stricken. This is not correct. As already noted, no weapon need be physically admitted into evidence in order to introduce into evidence testimony regarding the weapons seen by witnesses to the crime in question. *Henderson* v. *State, supra.*

It is also contended that the trial court erred when, after the jury returned its verdict, the verdict form was resubmitted to the jury in order to obtain the foreman's signature on the correct line. Such action by the trial court to correct a defective verdict before discharging the jury was proper. *Kolb* v. *State,* (1972) 258 Ind. 469, 282 N.E.2d 541; *Burnett* v. *State,* (1954) 233 Ind. 651, 122 N.E.2d 468; 8A I.L.E. *Criminal Law* § 629 (1971).

Finally, the Appellant urges error in the refusal by the trial court to grant a defense motion for mistrial based on remarks made during the State's final argument. The prosecutor stated to the jury at that time that the robbery in this case was "very cool, very business-like, not anything new to these defendant's, I'm sure." It is contended that this improperly referred to prior crimes, there being no evidence of such crimes in the record.

This isolated remark did not imply personal knowledge of the Appellant's guilt or innocence, but drew an inference from the evidence presented to the jury. And despite contentions by the Appellant to the contrary, the trial court admonished the jury to disregard any inference it considered unwarranted by the evidence. We do not think that the trial court abused its discretion when it denied the Appellant's motion for a mistrial. *Pearish* v. *State,* (1976) 264 Ind. 339, 344 N.E.2d 296.

The judgment of the trial court is affirmed.

Givan, C.J., Hunter, J., concur; DeBruler, J., dissents with opinion in which Prentice, J., concurs.

DISSENTING OPINION

DEBRULER, J.—This case requires that we decide whether the jury selection process employed by the trial court denied appellant's right to a proper jury. Here, the trial court excused 750 persons from a panel of 1000 summoned for jury service. The jury before which appellant was tried was selected from the 250 persons remaining on the panel. The trial court described the procedure by which the reduction in the panel was accomplished:

> "*Mr. Foley* [Defense Counsel]: How was the number reduced from a thousand to the present two hundred and fifty or so?
>
> *Court* [Trial Judge]: I told you. There's a—if you'll look on your questionnaire, you'll see right at the foot of it that the summonsed [sic] citizen may state any reason why he thinks or she thinks she shouldn't—he or she shouldn't serve, they're automatically excused. We force no one to serve as jurors in this Court. Everyone who is called are persons who said they were willing to serve. That's exactly how they were reduced. And, you may make—you, may at any time, make—put in, in the record, a copy of the questionnaire of all the jurors. The bailiff can furnish that. We know exactly who they are. And, that may be made a part of the record.
>
> *Mr. Foley:* Thank you.
>
> *Court:* That's the way it's done."

The trial court was supplied with the list of 1000 names by the jury commissioners. No complaint is lodged by appellant against the manner in which this list was compiled. Each person on the list received a questionnaire. On it the question was asked as to whether the panel member desired to be excused from jury service. If the panel member asked to be excused and provided some written statement supporting such request, the court automatically, and without considering the

content of any such supportive statement, granted the person an excuse. Such request was made by three-fourths of the entire panel, and upon this basis alone, these members were excused by the judge.

This blanket excuse was openly and deliberately granted by the judge. None of the 250 remaining, from which appellant's jury was selected, had requested excusal from jury service.

The Indiana Constitution guarantees to each person accused of crime, the right to a public trial by an impartial jury. Art. 1, § 13. The Legislature has established the qualifications for jurors. Ind. Code § 33-4-5-7 (Burns 1973). These qualifications are supplied for the purpose of limiting the discretion of the jury commissioners in selecting those to comprise the court's list of prospective jurors. The Legislature has granted exemptions to persons engaged in various occupations, i.e., policemen and firemen. Ind. Code § 18-1-11-13 (Burns 1974). Persons over sixty-five years of age are also granted exemption. Ind. Code § 33-4-5-7. And at law, trial courts have inherent discretionary authority to excuse persons who have been placed on the list of prospective jurors from jury service. *Tewell* v. *State,* (1976) 264 Ind. 88, 339 N.E.2d 792; *Depew* v. *Robinson,* (1884) 95 Ind. 109; *Glenn* v. *State,* (1972) 154 Ind. App. 474, 290 N.E.2d 103. The actual release of liability from jury service by application of an exemption or an excuse is under the control and supervision of the trial judge. Standards to be applied in releasing a prospective juror from jury service by reason of an exemption or an excuse are intended to limit the discretion of the trial judge.

The panel which appears in a court on the first morning of trial, has itself been selected through the efforts of the jury commissioners in compiling the list and of the judge in granting exemptions and excuses. The character of a jury, and thus its impartiality, is determined in part by the make-up of the panel from which it is selected. Therefore,

persons standing trial by jury have a strong legal interest in insuring that the jury commissioners and the courts utilize fair and reasonable standards in the panel selection process. The law must recognize this legal interest and its bearing upon the impartiality of juries, and provide protection for it.

In this case we deal with limitations upon the authority of the trial judge to grant *excuses* from jury service. Judicial response by this Court to date, limits this Court to a review of the exercise of such authority for an abuse of discretion only. In *DePew* v. *Robinson, supra,* we upheld the grant of an excuse to a prospective juror because that person was a witness in a cause to be tried. In *Tewell, supra,* we upheld the grant of an excuse because among other reasons the juror's glasses were broken. In *Glenn* v. *State, supra,* the challenged excuse was deemed proper because the juror had back trouble and could sit for only an hour before experiencing pain. In each of these cases the court dealt with the excusing of a single juror upon individual circumstances. Here the court dealt with a group consisting of 750 persons and granted them excuse upon a highly suspect characteristic. This was an abuse of discretion, and appellant's conviction should be reversed and a new trial granted.

A review by this Court of the grant of excuse to a large number of prospective jurors for abuse of discretion only is inadequate in light of constitutional right to an impartial jury effected by the excuse procedure. In *Taylor* v. *Louisiana,* (1975) 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690, the Supreme Court of the United States in dealing with the federal constitutional right to due process, not, I believe, at stake before us under appellant's allegations, held that a state may, consistent with that provision grant excuses and exemptions from jury service for undue hardship, necessity and because of occupations necessary to the welfare of the community. Prior to that case in *Thiel* v. *Southern Pacific Company,* (1946) 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181, that Court found the exclusion of wage earners from a panel because of a conceived group hardship to be contrary to the American con-

cept of a proper jury. The American Bar Association Standards relating to trial by jury recommend limiting the trial court in granting excuses not based upon specific exemptions to those persons who show "undue hardship or extreme inconvenience." § 2.1(d) And in fact, by Indiana statute applicable in counties alone having population of not less than 500,000 nor more than 600,000, the trial courts are required to grant excuse only upon consideration of individual circumstances, and upon a showing of "undue hardship, extreme inconvenience, or public necessity." Ind. Code § 33-4-5.5-15 (Burns 1973). It must of course be granted that the authority of the judge of the Marion Criminal Court was not subject to these statutory limitations nor the ABA Standards. However these materials have persuaded me that we should discard the vague standard of discretion in favor of something more specific.

Prentice, J., concurs.

NOTE.—Reported at 360 N.E.2d 830.