JAMES MCGRAW *v.* STATE OF INDIANA.
[No. 1176S374. Filed May 12, 1978.]

*Ernie S. Burke,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Kenneth R. Stamm,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant McGraw was convicted by a jury in the Marion Criminal Court on April 20, 1976, of commission of a felony, robbery, while armed. He was sentenced to imprisonment for a determinate period of twelve years.

Appellant raises two issues to be reviewed by this court: (1) whether the trial court erred in giving its instruction on reasonable doubt, and; (2) whether the verdict is supported by sufficient evidence.

## I.

Over objection of appellant, the trial court gave as preliminary instruction No. 5 the following instruction on reasonable doubt:

"A reasonable doubt is one which is based upon reason and common sense. It is a doubt which may reasonably arise from the evidence, or from the lack of evidence, or from a conflict of the evidence. It exists if you are uncertain of guilt, or if you can only guess or speculate as to guilt.

"On the other hand, reasonable doubt is not created by a lack of proof to an absolute certainty, for this is rarely possible. Nor does it arise from the mere possibility of error or mistake, or from the fact that you may find some doubt, because in any human activity there always exists the mere possibility of error or mistake, and you may always find some doubt if you look for it.

"You may find guilt beyond a reasonable doubt from all of the evidence if you are convinced that the defendant did commit the crime rather than probably did; if you are truly convinced of the defendant's guilt rather than only somewhat convinced; if you are convinced to a reasonable certainty rather than only fairly certain. If you are not so

convinced of the guilt of the defendant, then you should return a verdict of not guilty.

"Either a verdict of conviction or acquittal must be unanimous."

Appellant tendered, as his instruction No. 1, an instruction on reasonable doubt which was refused by the court. It read as follows:

"At this point the Court desires to explain to you what is meant by the words 'reasonable doubt' and instruct you concerning the rule of law which requires that a person charged with the commission of a crime be proved guilty beyond reasonable doubt before he can be convicted.

"A reasonable doubt, as the words imply, is such a doubt as may reasonably arise from the evidence, or from the lack of evidence, or from a conflict in the evidence, on or concerning a given fact or issue.

"It is not a mere possibility of error or mistake that constitutes a reasonable doubt, for despite every precaution that may be taken to prevent it, there may be in all matters pertaining to human affairs a mere possibility of error.

"If each of you are so convinced as a whole, of the guilt of the defendant, that as prudent men and women you would feel safe to act upon such conviction in a matter of highest concern and importance to your own dearest and most important interests where there was no compulsion or coercion upon you to act at all, then you will have attained such degree of certainty as excludes reasonable doubt and authorizes conviction.

"If you are not so convinced by all the facts and circumstances in the evidence as a whole of the guilt of the defendant you should acquit."

The position of the appellant is that the court attempted to improve upon the accepted language of his instruction No. 1 by substituting language that was misleading, and thus failed to define reasonable doubt. It is true that appellant's instruction No. 1 represented the standard "boilerplate" definition of reasonable doubt which has been long and many times approved. This court was faced with a similar situation in *Brown* v. *State*, (1977) 266 Ind. 82, 360 N.E.2d 830. In that case, the reasonable doubt instruction given by the court was as follows:

"A reasonable doubt is not a fanciful doubt. It is a doubt which arises from the evidence, the lack of evidence, or a conflict in the evidence. It is a doubt which would disturb the conscience of a resolute and decent person who is sincerely devoted to justice for everyone, without regard to his or her status in life or society."

The appellant in *Brown* also urged that the trial court erred by not giving the standard instruction, represented in the present case by defendant's instruction No. 1. This court held, however, that the omission of such language could not be considered reversible error. The reason given, as stated at 360 N.E.2d at 836, was that:

"This Court has long recognized that the term 'reasonable doubt' is not easily defined. *See Siberry* v. *State* (1892), 133 Ind. 677, 33 N.E. 681. While we think it wise to employ the language relied on by the Appellant, which has been accepted over a number of years, we do not think that it can be said that *only* that language will adequately instruct a jury."

We find the reasoning in *Brown* to be dispositive of the present issue. All of the elements of the definition of reasonable doubt are contained in the court's instruction No. 5, and the jury was properly and adequately instructed on the subject.

## II.

Appellant next challenges the sufficiency of the evidence to support his conviction of commission of a felony, robbery, while armed. The record shows that on February 6, 1976, Donna Cook was in the office of the D & B Auto Sales, a used car business owned by herself and her husband. A lone, young black man came in the door and started to approach the counter. There was a large collie puppy in a cage in the office. The dog jumped up when the man came in. There was a conversation then between Mrs. Cook and the man, concerning the safety of entering the office and the ability of the dog to get out of the cage. Mrs. Cook stated that she assured him that the dog could not get out of the cage. The man then approached the counter to talk to her about used cars, in

particular about a convertible. When Mrs. Cook approached the counter to get the keys for the car so that he might hear it run, the man grabbed her by the arm and held a gun in her face. He stated that he wanted money. In looking for money he also found her husband's handgun and took it, along with about $52 in cash. He then pointed both guns at her and asked her for more money. He then jerked her arm, throwing her to the floor, and left the office with the money and her husband's gun.

Mrs. Cook described her assailant as black, having a scar upon his forehead, a stocking cap pulled down, and carrying a very small gun. She further described him as being 5'8" or 5'9" tall and weighing between 130 and 140 pounds. The day after the robbery, a police officer brought eight or nine photographs of black men, some of whom had scarring on their foreheads, and Mrs. Cook picked out appellant James McGraw's picture from them. A couple of days later she was called down to the police station to view a lineup. She viewed six black men in the lineup who were identified to her only by number, and again picked out appellant McGraw. She described the gun the assailant was carrying at the time of the robbery as being a small gun, dark in color. When appellant McGraw was arrested by the police a small tear gas pistol was found in his automobile.

Mrs. Cook further stated that the appellant's brother, Otis McGraw, was in the office at 2:00 p.m. on the day of the robbery, and made a payment on an auto he had purchased from her husband. She said there was a young black man with him, but she paid no attention to him as she had no business with him. She stated she did not talk to this other man at all and hardly looked at him, so that she was unable to state whether he was James McGraw or to otherwise identify him. Both Otis McGraw and appellant James McGraw claim that James was the other man in the store with Otis at 2:00 p.m., but that he, James, was not in the store any time thereafter and did not commit the robbery.

In addition to Otis and James McGraw, their neighbor, Fanny May Harris, their mother, Mary McGraw, their friend, Larry Phillips, and appellant's girlfriend, Roselyn Carter, all testified as alibi witnesses. They all stated that appellant was at his home with them at the time of the alleged robbery.

Appellant bases his argument of insufficiency on the grounds that Mrs. Cook alone and uncorroborated, gave the convicting testimony, whereas six persons, including appellant and his brother, gave testimony in direct opposition to hers. It is his position that in the face of such odds, the testimony of more than one person would be required to be adequate under the law.

We cannot agree with appellant on the basis of the record before us. The facts show that Mrs. Cook was in the presence of the robber for some length of time, in the daylight, where there was close contact and opportunity for observation. She at all times stated that she was certain of her identification. She identified appellant's photograph from a display of eight or nine photographs shown to her by police. She also identified appellant in a lineup of six persons. The record shows that in both identification procedures, the other persons displayed were of the same general build, complexion, age, weight and general features as appellant, including the fact that in both procedures some of the other persons had scars on their forehead. In addition to this, the gas pistol found in appellant's vehicle met the description given by Mrs. Cook, although she could not absolutely identify it as being the gun held on her.

The cases cited by the appellant to sustain his position are those in which the state presented either circumstantial evidence or evidence in which a lone witness testified in a relatively weak or incredibly ridiculous manner. *Gaddis* v. *State*, (1969) 253 Ind. 73, 251 N.E.2d 658; *Manlove* v. *State*, (1968) 250 Ind. 70, 232 N.E.2d 874; *Ritchie* v. *State*, (1963) 243 Ind. 614, 189 N.E.2d 575; *Osbon* v. *State*, (1938) 213 Ind. 413, 13 N.E.2d 223. The facts here do not demonstrate the problem

faced in those cases, since Mrs. Cook was an eyewitness involved in the transaction as stated above. The jury heard all of the witnesses and all of the evidence and made its determination. There is no sound reason for this court to disturb that judgment.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 375 N.E.2d 1099.